A05A0381. ALVARADO v. THE STATE.
(610 SE2d 675)

BLACKBURN, Presiding Judge.

In a bench trial based on stipulated facts, Hander Avila Alvarado was found guilty of trafficking in methamphetamine[1] and possession of a firearm during the commission of a felony.[2] Following the denial of his motion for new trial, Alvarado appeals, contending that: (1) the trial court erred in denying his motion to suppress; (2) he did not knowingly, intelligently, and voluntarily waive his right to a trial by jury; and (3) he received ineffective assistance of counsel. For the reasons set forth below, we affirm.

1. Alvarado first contends that the trial court erred in denying his motion to suppress evidence obtained as a result of a warrantless entry into his residence. "Because the parties have stipulated to the facts, our review is de novo." *Green v. State*.[3]

The stipulated evidence, which includes the testimony and evidence presented at the hearing on the motion to suppress, shows that on July 22, 2003, agents with the United States Drug Enforcement Administration ("DEA") used an informant to attempt to purchase methamphetamine from Chris Lunsford, a suspected dealer. After Lunsford called the informant on a cell phone and told him that he had to meet his supplier at a mall, the DEA agents deployed in the parking areas of the mall so that they could observe the transaction.

---

[1] OCGA § 16-13-31 (e).

[2] OCGA § 16-11-106.

[3] *Green v. State*, 240 Ga. App. 377 (1) (523 SE2d 581) (1999).

When Lunsford and a companion arrived at the mall, they parked and walked over to a car in which Alvarado was sitting. After approximately five minutes, during which time the agents observed behavior they considered consistent with a methamphetamine transaction, Lunsford and his companion got out of Alvarado's car and returned to their own. Because Lunsford's and Alvarado's vehicles left in opposite directions, the DEA agents split into two teams, with Special Agent Jeff Dalman and two others following Alvarado, and the rest of the agents following Lunsford and his companion.

Alvarado led Dalman and the other agents to his residence, which he entered upon arrival. As Dalman drove past the house, he was informed by the other team of agents that they had stopped Lunsford and his companion. Lunsford's companion had gotten out of the car and was apprehended after a struggle; he was armed with a .45 caliber handgun and had a small amount of methamphetamine in his possession. Lunsford escaped. Shortly thereafter, Dalman saw a man in Alvarado's driveway talking on a cell phone. Concerned that Lunsford might be calling the man with the cell phone to warn him about the DEA agents and that the call might cause Alvarado to flee, destroy evidence, or arm himself, Dalman decided to secure the residence and detain any people inside.

The three DEA agents moved up the driveway. One agent took the cell phone from the man in the driveway and detained him, while Dalman and the other agent approached the house. Finding the front door open, the two entered the house and found several people in the front room. After identifying themselves as police and noting that Alvarado was not among the people in the front room, the DEA agents went to the door of a back bedroom. Hearing movement within the room, and finding that the door was locked, the agents forced the door open. As they entered the room, Alvarado, soaking wet, came out of the bathroom. Rushing into the bathroom, the agents recovered a large brick of methamphetamine from the toilet bowl. Agents also recovered a .44 caliber semiautomatic handgun. A search warrant was subsequently obtained and additional quantities of methamphetamine were found during execution of that warrant.

We find from a de novo review of the stipulated evidence that the warrantless search of Alvarado's residence was proper under the exigent circumstance doctrine.

> The exigent circumstance doctrine provides that when probable cause has been established to believe that evidence will be removed or destroyed before a warrant can be obtained, a warrantless search and seizure can be justified. As many courts have noted, the need for the exigent circumstance

doctrine is particularly compelling in narcotics cases, because contraband and records can be easily and quickly destroyed while a search is progressing. Police officers relying on this exception must demonstrate an objectively reasonable basis for deciding that immediate action is required.... In determining whether agents reasonably feared imminent destruction of the evidence, the appropriate inquiry is whether the facts, as they appeared at the moment of entry, would lead a reasonable, experienced agent to believe that evidence might be destroyed before a warrant could be secured.

(Citations omitted.) *United States v. Young.*[4]

In this case, Dalman, a DEA agent with 17 years experience, had probable cause to believe a drug sale had occurred between Alvarado and Lunsford, a suspected drug dealer, as he had observed activity which was consistent with such a transaction and which corroborated information he had received from an informant. Further corroboration was provided by the flight of Lunsford and the apprehension of Lunsford's companion, who had methamphetamine and a handgun on his person. Dalman testified that he was concerned with the possibility that Lunsford had called Alvarado to warn him about the police; he also testified that when he heard movement behind Alvarado's locked bedroom door, he believed that Alvarado was doing "[o]ne of two things: grabbing any type of weapon or destroying evidence."

Evidence presented at the suppression hearing provided a basis for Dalman's fears. Dalman knew that Lunsford had communicated with the DEA's informant on his cell phone earlier that day in arranging the sale of the methamphetamine. Shortly after Dalman learned that Lunsford had escaped, he saw a man in the driveway of Alvarado's residence speaking to someone on a cell phone. Dalman also knew that the suspect who had been apprehended had been armed with a heavy caliber handgun and had been in possession of methamphetamine. Exacerbating these circumstances is the fact that the criminal activity involved contraband which could be easily destroyed. Given these facts and circumstances, we find that a reasonable officer would have believed that there was a likelihood that Alvarado would destroy the methamphetamine or other evidence in his bedroom, or even arm himself against the DEA agents,

---

[4] *United States v. Young*, 909 F2d 442, 446 (11th Cir. 1990).

before a warrant could be secured. Accordingly, we conclude that the warrantless search and seizure was justified under the exigent circumstance doctrine.

2. Alvarado also argues that he did not knowingly, intelligently, and voluntarily waive his right to a trial by jury.

> A criminal defendant must personally and intelligently participate in the waiver of the constitutional right to a trial by jury. When the purported waiver of this right is questioned, the State bears the burden of showing that the waiver was made both intelligently and knowingly, either (1) by showing on the record that the defendant was cognizant of the right being waived; or (2) by filling a silent or incomplete record through the use of extrinsic evidence which affirmatively shows that the waiver was knowingly and voluntarily made. The question of whether a defendant is capable or incapable of making a knowing and intelligent waiver of his rights is to be answered by the trial judge and will be accepted by this court unless such determination is clearly erroneous.

(Citations and punctuation omitted.) *Whitaker v. State*.[5]

The record supports the trial court's finding that Alvarado intelligently and knowingly waived his right to a trial by jury. The trial court made a thorough inquiry to ensure that Alvarado understood his right to a jury trial. Through a Spanish interpreter, the court first ascertained that Alvarado had signed a written waiver of right to jury trial and consent to bench trial. The trial court then went over the charges against Alvarado and the implications of his plea of not guilty. The court reviewed jury selection and presentation of the case to a jury, as well as the bench trial process. Finally, the court informed Alvarado that he had an absolute right to a trial by jury and that the case would proceed to a jury trial unless he knowingly and voluntarily waived his right to the jury trial. Through the interpreter, Alvarado affirmed that he understood that he had a right to a jury trial and that if he waived that right his case would be decided by the judge. When asked whether he wanted his case decided by a judge or a jury, he stated, "by the judge." We conclude that the trial court's determination that Alvarado knowingly and voluntarily waived his right to a trial by jury was not clearly erroneous.

Other evidence presented at the hearing on the motion for new trial also refutes Alvarado's argument that he did not understand his right to a trial by jury. The interpreter, when asked if Alvarado

---

[5] *Whitaker v. State*, 256 Ga. App. 436, 439 (2) (568 SE2d 594) (2002).

understood the questions the trial court had asked him about his right to a jury trial, answered, "Yes. In fact, I asked him several times. It is my custom in every single case to ask the defendants if they are sure they are understanding me. I always ask them and tell them, if you do not understand what I'm saying to you, you need to tell me so I can convey these to your attorney. You need to understand what's going on." She added that Alvarado never gave any indication that he did not understand what was going on.

Alvarado's trial attorney, who speaks Spanish, testified at the hearing on the motion for new trial that he discussed with Alvarado his right to a jury trial on several occasions. Trial counsel also explained to Alvarado that the main issue in the case was the suppression motion and that, if that motion were denied, it was likely that he would be convicted in either a bench trial or a jury trial. Counsel told Alvarado that waiving a jury trial would not be a wise decision and that the only advantage to a bench trial was timing; that is, by submitting to a bench trial, Alvarado would be able to appeal the denial of the motion to suppress sooner. Alvarado decided that he wanted a bench trial. Trial counsel testified that if Alvarado had wanted a jury trial, he would have proceeded to trial, but Alvarado never said that he wanted a jury trial. In fact, Alvarado himself testified at the hearing that he did not tell trial counsel that he wanted a jury trial until after he had been found guilty in the bench trial. In light of this testimony, it is abundantly clear that Alvarado waived his right to a jury trial and consented to a bench trial.

3. Alvarado maintains that trial counsel rendered ineffective assistance by agreeing to a stipulated bench trial. This enumeration of error is meritless.

"To prevail on his ineffective assistance of counsel claim, [Alvarado] must show that his counsel's performance was deficient and that, but for the deficiency, there is a reasonable probability he would have insisted on having a jury trial." *Marshall v. State.*[6] "There is a strong presumption that trial counsel performed within the wide range of reasonable professional assistance, and a trial court's finding that counsel's performance was within that range will not be reversed on appeal unless it is clearly erroneous." Id. at 646. See also *Strickland v. Washington.*[7]

As established in Division 2, Alvarado, against his counsel's advice, knowingly and voluntarily waived his right to a jury trial. Trial counsel's testimony revealed that he told Alvarado that waiving a jury trial would be unwise, and that the decision to proceed with a

[6] *Marshall v. State*, 253 Ga. App. 645 (560 SE2d 118) (2002).
[7] *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984).

bench trial was Alvarado's, not counsel's. Alvarado himself testified that he did not tell trial counsel that he wanted a jury trial until after he had been found guilty in the bench trial. On appeal, Alvarado cannot blame trial counsel for a decision he himself made over counsel's objection. "A defendant will not be allowed to induce an asserted error, sit silently hoping for acquittal, and obtain a new trial when that tactic fails. Induced error is impermissible and furnishes no ground for reversal." (Punctuation omitted.) *Rose v. State*.[8] There was no ineffective assistance here and this claim is without merit. See *Arnold v. State*;[9] *Gordon v. State*[10] (" '[a] self-induced error is too close to premeditated error, hence beyond further appellate scrutiny' "); *Sanders v. State*[11] ("[u]nder these circumstances, trial counsel cannot be labelled ineffective where the defendant proceeded against counsel's advice and blundered").

We add that, even if it were trial counsel's decision, rather than Alvarado's, to pursue a bench trial, such a decision would have been a strategic and tactical decision. "Such decisions provide no valid basis for an ineffective assistance claim." *Rose v. State*, supra at 235 (2) (a). We must conclude that the trial court did not clearly err in finding that the performance of Alvarado's counsel was not ineffective.

*Judgment affirmed. Miller and Bernes, JJ., concur.*

DECIDED FEBRUARY 18, 2005.

*Robert Greenwald*, for appellant.

*Daniel J. Porter, District Attorney, John A. Steakley, Assistant District Attorney*, for appellee.

---

[8] *Rose v. State*, 258 Ga. App. 232, 235 (2) (a) (573 SE2d 465) (2002).

[9] *Arnold v. State*, 253 Ga. App. 387, 389 (1) (559 SE2d 131) (2002).

[10] *Gordon v. State*, 252 Ga. App. 133, 135 (2) (555 SE2d 793) (2001).

[11] *Sanders v. State*, 211 Ga. App. 859, 861 (1) (440 SE2d 745) (1994).