# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-06-00738-CR

**Raul Ontiveros, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 147TH JUDICIAL DISTRICT
## NO. D-1-DC-05-302479, HONORABLE WILLIAM BACHUS JR., JUDGE PRESIDING

## O P I N I O N

A jury found appellant Raul Ontiveros guilty of entering a habitation and committing or attempting to commit sexual assault, for which it assessed punishment at twenty-five years' imprisonment. *See* Tex. Penal Code Ann. § 30.02(a)(3) (West 2003). In his only point of error, appellant contends that DNA evidence obtained by swabbing his penis should have been suppressed as the fruit of an unconstitutional search. We will overrule this contention and affirm the conviction.

When we review a trial court's ruling on a motion to suppress evidence, we defer to the court's factual determinations but review de novo the court's application of the law to the facts. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We will sustain the trial court's ruling admitting evidence if the ruling is reasonably supported by the record and correct on any theory of law applicable to the case. *Willover v. State*, 70 S.W.3d 841, 845 (Tex. Crim. App. 2002).

The nineteen-year-old complainant testified that she was awakened during the early morning hours of October 30, 2005, by the presence of appellant in her bed. She recognized appellant because he lived with her aunt and was the father of her aunt's children. Overcoming the complainant's resistance, appellant penetrated her vagina with his penis. When the assault ended, the complainant took a shower. She then ran from the family apartment and called her boyfriend. Appellant was gone by this time, so the complainant reentered the apartment and woke up her parents to tell them what had happened.

The complainant's stepfather testified that after hearing the complainant's report, he called the police and then walked downstairs. In the living room, he noticed that the air conditioning unit had been removed from the window. A crime scene specialist later found blood on the curtain next to the air conditioner. DNA tests identified this blood as appellant's.

Detective Christopher Dunn arrived at the complainant's residence at about 5:00 a.m. There, he saw the apparent forced entry and learned that the complainant had identified appellant as her attacker. Dunn then went to the hospital, where he interviewed the complainant. At about 8:30 a.m., Dunn received a report that appellant had been found by members of the complainant's family, apparently at the residence he shared with the complainant's aunt, and that there was an ongoing physical and verbal dispute. Having determined that there were outstanding warrants for appellant's arrest, Dunn ordered officers at the scene to arrest appellant on the warrants, book him into jail, and place a hold on him for the sexual assault. He also gave instructions to "ask [appellant] for a voluntary specimen from his penis or penis swab, but if he did not consent, I wanted it anyway under exigent circumstances."

Asked to explain what he meant by "exigent circumstances," Dunn testified:

> The foreign DNA on a human body, in my training and experience, is very fragile. It can be removed and destroyed very readily. Three hours had already elapsed and there was still a possibility that that DNA could be present. It has also been my experience that suspects we have had in the interview rooms, hearing of a penile swab, had attempted to destroy the evidence on videotape during their interrogations.

Dunn testified that he did not know if a magistrate was available at the jail that morning to issue a search warrant. He added that because it was a Sunday morning, "the judges have an extremely large docket from a Saturday night," and he estimated that it "could have been four or five hours before I could have received a search warrant. In that time frame, I believed, after three hours had expired, that DNA could have been damaged." Dunn testified that a suspect had been known to spit on his hands and try to wipe DNA material off of his penis. He also testified that urine can destroy DNA evidence.

Officer Pedro Arroyo transported appellant from the scene of his arrest to the jail. Arroyo testified that he took appellant to a private room and, as instructed, asked appellant to submit to a penile swab. Appellant refused. Arroyo then told appellant that the swab would be taken whether he consented or not. According to Arroyo, appellant then agreed to the procedure. An evidence technician, James Bixler, testified that he took the swab at about 9:30 a.m. The procedure was described as "run[ning] it across [appellant's] penis." Bixler said that he and appellant were the only persons in the room and that appellant offered no resistance. Appellant testified, to the contrary, that two police officers were in the room with Bixler and forced him to submit to the swab.

3

Epithelial cell fractions containing the complainant's DNA were found on the swab, as were sperm cell fractions containing appellant's DNA.

Appellant argues that the swabbing of his penis was an unreasonable search under the Fourth Amendment. *See* U.S. Const. amend. IV. A warrantless search of a person or property is presumptively unreasonable. *Minnesota v. Dickerson*, 508 U.S. 366, 372 (1993). However:

> The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.

*Bell v. Wolfish*, 441 U.S. 520, 559 (1979).

In *Cupp v. Murphy*, Murphy agreed to speak to police officers investigating the strangulation murder of his estranged wife. 412 U.S. 291, 292 (1973). While he was at the station house, officers noticed a dark spot on his finger. *Id*. Suspecting that it might be dried blood and knowing that evidence of strangulation is often found under the assailant's fingernails, the officers asked Murphy if they could take a sample of scrapings from his fingernails. *Id*. Murphy refused, and there was trial testimony that he began to rub his hands together and put them in his pockets. *Id*. at 296. Over Murphy's protest, the officers took the samples anyway, without a warrant. *Id*. at 292. The samples contained traces of skin, blood cells, and fabric from the victim's clothing. *Id*. The Supreme Court found this search to be reasonable: "On the facts of this case, considering the existence of probable cause, the very limited intrusion undertaken incident to the station house

4

detention, and the ready destructibility of the evidence, we cannot say that this search violated the Fourth and Fourteenth Amendments." *Id*. at 296.

The court of criminal appeals recently addressed the propriety of a warrantless search far more intrusive than the one challenged by appellant. In *McGee v. State*, a police officer, acting on a reliable tip that McGee was selling crack cocaine that he kept hidden between his buttocks, arrested McGee and took him to a nearby fire station. 105 S.W.3d 609, 612-13 (Tex. Crim. App. 2003). There, the officer compelled McGee to drop his pants, bend over, and spread his buttocks. *Id*. The officer performed a visual search of McGee's anal region, during which he saw and retrieved several rocks of crack cocaine wrapped in red plastic that were lodged between McGee's buttocks. *Id*. at 613. The court of criminal appeals acknowledged the obvious intrusiveness of the search, but concluded that the search was justified by probable cause and had been conducted in a proper manner. *Id*. at 616-17. The court held that under the circumstances, it was a reasonable search incident to arrest under the Fourth Amendment. *Id*. at 618.

In the instant case, appellant had been lawfully arrested on outstanding warrants. The police had probable cause to believe that he had committed a sexual assault involving penile penetration only a few hours before his arrest and thus to believe that DNA evidence might be found on his penis. The challenged search consisted of simply rubbing a swab across appellant's penis. To spare appellant embarrassment, this procedure was performed in a private room. Appellant's testimony to the contrary notwithstanding, the evidence supports a finding that no force was used and that the only other person in the room was the evidence technician. Appellant argues that even though he knew that he had been accused of the sexual assault, any risk that he might attempt to

destroy the evidence could have been eliminated by simply handcuffing him and forbidding him from going to the restroom while the officers waited for a search warrant. But even while handcuffed, appellant could have urinated in his pants and thereby damaged the fragile DNA evidence. Considering the factors discussed in *Wolfish* and applied in *Murphy* and *McGee*, we conclude that the warrantless swabbing of appellant's penis to obtain DNA evidence was, under the circumstances, a reasonable search under the Fourth Amendment.

In his brief, appellant suggests that "if the Court found that the officers did not violate the Fourth Amendment . . . , the Court may nevertheless find that Art. I, Section 9 of the Texas Constitution was violated." Appellant does not present specific arguments and authorities to support this suggestion. *See Bell v. State*, 90 S.W.3d 301, 305 (Tex. Crim. App. 2002). In any case, having concluded that the search at issue was reasonable under the Fourth Amendment, we also conclude that it was reasonable under article I, section 9. *See Hulit v. State*, 982 S.W.2d 431, 436 (Tex. Crim. App. 1998) (holding that article I, section 9 contains no requirement that search be authorized by warrant).

We do not hold that a search of the sort at issue here may be routinely conducted whenever a suspect is arrested, even if the arrest is for a sexual assault. Our decision is based on the specific facts of this case, including the nature of the sexual assault, the strength of the probable cause, the relatively short amount of time between the assault and the search, the showing of a need to act before the DNA evidence could be damaged or destroyed, and the manner in which the search was conducted in a private room by a trained technician.

Appellant's point of error is overruled, and the judgment of conviction is affirmed.

_____

W. Kenneth Law, Chief Justice

Before Chief Justice Law, Justices Puryear and Henson

Affirmed

Filed:   August 10, 2007

Publish

7