A08A1710. JAMES v. THE STATE.
(670 SE2d 181)

MILLER, Judge.

Othneil Albert James appeals from the trial court's denial of his four separate motions to suppress evidence James claims was obtained as a result of law enforcement's warrantless, illegal entry into his residence. Finding that exigent circumstances existed which justified the warrantless entry into James's home, we affirm.

> When reviewing a ruling on a motion to suppress, where, as here, the evidence is uncontroverted and there exists no question regarding witness credibility, we review de novo the trial court's application of the law to the facts presented. In doing so, however, we construe all evidence presented in favor of the trial court's findings and judgment, and we will not disturb the trial court's order on a motion to suppress if there is any evidence to support it.

(Citations and punctuation omitted.) *Love v. State*, 290 Ga. App. 486 (659 SE2d 835) (2008).

So viewed, the evidence shows that on March 26, 2005, Gwinnett County police officers responded to a 911 call reporting a rape at an address in Snellville. When officers responded to that address, a woman came out the front door of James's residence and walked to the officers' car, leaving the front door open behind her. After speaking with the victim, the responding officers summoned Sergeant J. P. Wilbanks, who was serving as the department's "on-call" crimes detective that night. When Wilbanks arrived, the victim was wrapped in a blanket and was visibly upset. The victim told Wilbanks that she was from Texas and had traveled to Georgia to visit James, whom she had been dating since the previous July. Since her arrival

in Georgia two days earlier, the couple's relationship "had begun to deteriorate," and James had raped her twice. The victim stated that the first incident had occurred the previous afternoon in the back bedroom on the left side of the house. The victim thereafter locked herself in the front bedroom on the left side of the house. Later that evening, after the victim refused James entry to that bedroom, he broke the lock on the door, entered the room, tore off the victim's clothes and raped her a second time. When the victim left the house to meet with police, James was asleep inside the residence.

Wilbanks interviewed the victim for approximately 30 minutes to an hour in a police car, which was parked facing James's residence. As the interview concluded, Wilbanks saw a light come on in the upper left-hand corner of the house, and the victim identified that room as the one where James had gone after raping her the second time. Shortly thereafter, Wilbanks saw a light go on in a room the victim identified as the bedroom in which the second rape occurred.

Knowing that James was now awake, and believing that the information he had gave him probable cause to obtain a search warrant, Wilbanks became concerned about preserving any evidence that was in the house. Wilbanks left the victim in the police car and proceeded to the front door of the residence, accompanied by the two responding officers. Wilbanks planned to explain to James that he would need to secure the residence until a search warrant could be obtained. When he reached the open front door, Wilbanks called out, identifying himself as a Gwinnett County police officer. When he received no response, Wilbanks called out a second time, again identifying himself as a police officer, but James still failed to reply.

Combined with his knowledge that James was now awake in the house, James's failure to respond both heightened Wilbanks's concern about the potential destruction of evidence and caused him significant concern about the safety of the officers. The victim's allegations indicated that James was dangerous, and Wilbanks became concerned that James could be arming himself. Thus, after waiting what he considered a "reasonable amount of time" for someone to respond, Wilbanks entered James's house, stepping through the front door and into a split-level entry foyer, with stairs on the right leading to the lower level and stairs on the left leading to the upper level. Wilbanks proceeded up the stairs to the left, toward the area where the lights in the house were on. He saw James standing by a bedroom door and called out to him, but received no response. Wilbanks called out twice more and, after a slight delay, James turned toward him. James walked down the hallway to meet Wilbanks, who explained who he was and why he was there. James walked into the front bedroom and, because James offered no objection, Wilbanks followed him.

In the bedroom, Wilbanks saw that the door lock had been broken and observed clothing lying on the floor, at least some of which appeared to be torn. At that point, Wilbanks asked James if he was willing to speak with him and James agreed. The two men went to the living room, where Wilbanks tape recorded his interview with James. During that interview, James admitted to a physical altercation with the victim and then having sex with her, but claimed that the sex was consensual. Wilbanks left the house and again spoke with the victim, then returned to the house and arrested James.

Before leaving the scene, Wilbanks posted an officer outside James's residence to secure the home while he obtained a search warrant. In support of his application for a search warrant of James's house, Wilbanks gave an affidavit in which he recited all of the foregoing facts, including the victim's statement, James's statement, and Wilbanks's observations upon entering James's residence. The warrant issued and, as a result, police obtained five articles of clothing, a tissue with a suspected blood stain, and five pieces of carpet taken from the two bedrooms. Because police believed that at least some of these items might contain evidence of bodily fluids, Wilbanks then applied for and received a warrant to obtain a sample of James's DNA. In support of the application for the second warrant, Wilbanks submitted an affidavit that was substantially similar to that submitted in support of the first warrant, but which also stated that police had recovered certain items of evidence from James's home.

Prior to trial, James moved to suppress his statement to police, the evidence seized from his house, and the DNA evidence, claiming that it all resulted from law enforcement's illegal, warrantless entry into his home. Following a hearing, the trial court denied those motions, finding that exigent circumstances justified Wilbanks's entry into James's residence. The trial court subsequently granted James's motion for a certificate of immediate review, and this Court granted James's application for a discretionary appeal.

James's motions to suppress were based upon the well-established principle that the Fourth Amendment usually prohibits police officers from entering a person's home without the homeowner's consent, absent a warrant allowing them to do so. See, e.g., *State v. Pando*, 284 Ga. App. 70, 72 (1) (a) (643 SE2d 342) (2007). An exception to the warrant requirement exists, however, where "the exigencies of the situation make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment." (Citation and punctuation omitted.) *Brigham City, Utah v. Stuart*, 547 U. S. 398, 403 (II) (126 SC 1943, 164 LE2d 650) (2006). Exigent circumstances may be found where

police reasonably perceive an emergency involving a threat to life or property, or where

> an officer is in hot pursuit of a fleeing felon, where an officer reasonably fears the imminent destruction of evidence if entry into the residence is not immediately effected, and where an officer reasonably perceives that a suspect within the dwelling poses a risk of danger to the police or others.

*Love*, supra, 290 Ga. App. at 488.

Here, the trial court found that the combination of the open front door, the knowledge that James was inside the house, and James's failure to respond to police officers gave rise to a reasonable belief that James could be injured or sick and in need of assistance. James argues that this finding is unsupported by the record, because Wilbanks, who was the only witness to testify at the suppression hearing, never stated that he feared James might be sick or injured. While we agree with James that the trial court erred in stating the nature of the exigent circumstances justifying law enforcement's warrantless entry, we nevertheless find that the record shows that exigent circumstances did, in fact, exist. We therefore affirm the trial court's order under the "right for any reason" rule. See *English v. State*, 288 Ga. App. 436, 442 (3) (654 SE2d 150) (2007) ("Although the trial court gave other reasons for denying the motion to suppress, a judgment right for any reason will be affirmed.") (footnote omitted).

As noted above, exigent circumstances may be found "where an officer reasonably fears the imminent destruction of evidence if entry into the residence is not immediately effected." *Love*, supra, 290 Ga. App. at 488. See also *Land v. State of Ga.*, 265 Ga. App. 859, 861 (1) (595 SE2d 540) (2004) ("A classic example of exigent circumstances is the likelihood that contraband is in danger of immediate destruction.") (footnote omitted). James, however, argues that this exigent circumstances exception to the warrant requirement was formulated for use exclusively in narcotics cases, because the evidence in such cases can so easily be destroyed or disposed of. See *Alvarado v. State*, 271 Ga. App. 714, 715-716 (1) (610 SE2d 675) (2005) ("[T]he need for the exigent circumstance doctrine is particularly compelling in narcotics cases, because contraband and records can be easily and quickly destroyed while a search is progressing.") (citation and footnote omitted). We disagree. Exigent circumstances exist whenever the police have "probable cause . . . to believe that [any] evidence will be removed or destroyed before a warrant can be obtained. . . ." (Citation and footnote omitted.) Id. Thus, the fact that in this case the police feared the destruction of nonnarcotic

evidence does not alter our exigent circumstances analysis.

Such an analysis requires us to determine whether police had an objectively reasonable basis for fearing the imminent destruction of the evidence at issue during the time it took police to obtain a search warrant. *Alvarado*, supra, 271 Ga. App. at 715-716 (1). In making that determination, "the appropriate inquiry is whether the facts, as they appeared at the moment of entry, would lead a reasonable, experienced [officer] to believe that evidence might be destroyed before a warrant could be secured." (Citation and footnote omitted.) Id. See also *Nelson v. State*, 271 Ga. App. 658, 661-662 (1) (c) (610 SE2d 627) (2005). (In determining whether a police officer reasonably perceived exigent circumstances, we view the facts "from the standpoint of a hypothetical 'reasonable' officer, . . . acting in a quickly developing situation.") (punctuation and footnote omitted).

One of the key facts known to Wilbanks was that rape cases usually rely heavily on physical evidence that, like narcotics, can easily be altered or destroyed. Carpets can be cleaned and clothes can be washed, destroyed, or otherwise disposed of. The vulnerability of the potential evidence, in conjunction with James's conduct in refusing to respond to police, was sufficient to support Wilbanks's reasonable belief that James would attempt to destroy such evidence during the time it would take to secure a warrant. See *Land*, supra, 265 Ga. App. 859. In *Land*, officers conducting a drug investigation knocked on a suspect's door and identified themselves as law enforcement. Police were aware that the suspect was in the apartment and, when the suspect refused to respond to their knocks, they forced their way into the residence to prevent the destruction of evidence. The suspect later moved to suppress the evidence seized from the apartment, claiming that law enforcement had entered the home illegally. This Court affirmed the trial court's denial of that suppression motion, reasoning that

> a reasonable officer would have believed that there was a likelihood that [the suspect], who knew the officers were at the apartment door but refused to respond to the officers' knocking, would destroy any methamphetamine or other evidence in the apartment. Given the officers' reasonable belief of exigent circumstances, they were justified in making a warrantless entry for the purpose of securing the apartment until a search warrant could be obtained. The trial court therefore did not err in denying [the] motion to suppress.

(Footnote omitted). Id. at 861-862 (1).

Similarly, Wilbanks testified that he approached the residence

after he realized that James was awake, because he feared that James might destroy evidence in the house. This concern was justifiably heightened when James refused to respond to law enforcement's calls from the open front door. Viewed from the officer's perspective, in the context of a situation where quick action was required, we find that Wilbanks reasonably believed he needed to enter the residence to secure evidence until a search warrant could be obtained. *Land*, supra, 265 Ga. App. at 861-862 (1). See also *State v. David*, 269 Ga. 533, 535-536 (2) (501 SE2d 494) (1998) (officer's warrantless entry justified by likelihood that evidence would be destroyed, where officer saw occupant attempt to conceal the same in response to police presence at the door); *Binkley v. State*, 255 Ga. App. 313, 314-315 (566 SE2d 31) (2002) (warrantless entry justified where defendant could have destroyed evidence when, after being questioned by police outside of residence, he went back inside house without permission); *Taylor v. State*, 254 Ga. App. 150, 151-152 (1) (561 SE2d 833) (2002) (same). Compare *State v. Charles*, 264 Ga. App. 874, 875-876 (1) (592 SE2d 518) (2003) (warrantless entry not justified where defendant answered and cooperated when police knocked on door).

Because we find that the warrantless entry into James's home was justified by exigent circumstances, we affirm the trial court's order denying his motion to suppress evidence obtained as a result of that entry.

*Judgment affirmed. Blackburn, P. J., and Ellington, J., concur.*

DECIDED NOVEMBER 18, 2008 — 

*Glynn R. Stepp*, for appellant.

*Daniel J. Porter, District Attorney, Richard A. Vandever, Assistant District Attorney*, for appellee.