A09A1172. MINOR v. THE STATE.
(680 SE2d 459)

BLACKBURN, Presiding Judge.

Following a jury trial, Randall Minor appeals his convictions of manufacturing methamphetamine,[1] criminal attempt to manufacture methamphetamine,[2] possession of methamphetamine,[3] tamper-

---

[1] OCGA § 16-13-30 (b).

[2] OCGA §§ 16-4-1; 16-13-30 (b).

[3] OCGA § 16-13-30 (a).

ing with evidence,[4] and possession of marijuana.[5] Specifically, he contends that the trial court erred in denying his motion to suppress, arguing that his detention while officers waited for a search warrant was unlawful and that the search warrant for his property was not supported by probable cause. For the reasons set forth below, we affirm.

"In considering an appeal from denial of a motion to suppress, this Court construes the evidence in favor of the trial court's ruling, and we review de novo the trial court's application of law to undisputed facts." *Jackson v. State*.[6] "Additionally, we must defer to the trial court's determination on the credibility of witnesses, and the trial court's ruling on disputed facts must be accepted unless it is clearly erroneous." (Punctuation omitted.) *Wesson v. State*.[7] "[I]n reviewing the denial of a motion to suppress, we consider all the evidence of record, including evidence introduced at trial." *Jackson*, supra, 280 Ga. App. at 717.

So viewed, the record shows that shortly before noon on March 8, 2006, a Department of Family and Children Services (DFCS) investigator and Sheriff's Deputy Cooley went to Minor's residence to investigate a report, which they had received from fellow Sheriff's Deputy Reyes, that Minor's two children were being exposed to illegal drug use in the home. Upon arriving at Minor's residence, they pulled into the driveway behind a vehicle, which was about to leave and which contained Minor and two of his friends. Minor exited the back seat of the vehicle, and as he approached the DFCS investigator and Deputy Cooley to talk to them, Deputy Cooley smelled the odor of raw marijuana on him. Consequently, while the DFCS investigator spoke to Minor about the alleged drug use in the home, Deputy Cooley asked the driver of the vehicle if she could search it. The driver consented, and in the course of her search of the vehicle, Deputy Cooley found several marijuana seeds and stems. After completing the search, she ran a check on the driver's license and arrested the driver upon learning that his license had been suspended. Because her vehicle was not equipped to transport arrested suspects, Deputy Cooley called for backup. Within a few minutes, another deputy arrived and placed the driver in the back seat of his vehicle.

In the meantime, Minor had become angry with the DFCS investigator for requesting that he submit to a drug screening. After

---

[4] OCGA § 16-10-94 (a).

[5] OCGA § 16-13-30 (j) (1).

[6] *Jackson v. State*, 280 Ga. App. 716, 716 (634 SE2d 846) (2006).

[7] *Wesson v. State*, 279 Ga. App. 428, 431 (2) (631 SE2d 451) (2006).

asking the DFCS investigator and the deputies to leave his property, he returned to his friend's vehicle and grabbed a black fanny pack from the back seat. When Deputy Cooley asked if she could search his pack, Minor refused and went inside his home with his other friend. At that time, Deputy Cooley called Deputy Reyes, who had initially informed her and the DFCS investigator of Minor's alleged drug use, and requested further instructions. Deputy Reyes told Deputy Cooley to secure the premises while he obtained a search warrant. Subsequently, Deputy Cooley informed Minor that Deputy Reyes was obtaining a search warrant and ordered Minor and his friend to exit the home and wait on the front porch. After waiting for over a half hour, Minor requested permission to use his bathroom, which the deputies refused. A short time later, Minor bolted into his home and shut the door. Both deputies pursued and were able to subdue Minor as he was carrying his fanny pack toward the bathroom.

Approximately an hour and a half later, Deputy Reyes arrived with a search warrant. In searching Minor's pack, the deputies found several small bags of marijuana, a set of digital scales, prescription medication, and a glass tube, which contained a white residue that was determined to be methamphetamine. While searching the back yard, the deputies noticed a path leading to a wooded area near a creek. Within this wooded area, which was approximately 50 yards away from Minor's home, the deputies discovered a blue tarp being used as a makeshift shelter, underneath which were numerous items associated with the manufacture of methamphetamine. In addition, the deputies found several leashed dogs, which appeared to be malnourished, and also found the partially decomposed body of another dog.

Minor was indicted on one count each of trafficking in methamphetamine, manufacturing methamphetamine, attempt to manufacture methamphetamine, possession of methamphetamine, tampering with evidence, possession of marijuana, and cruelty to animals. Prior to trial, he filed a motion to suppress evidence, which the trial court denied following a hearing. After the State rested its case, it withdrew the trafficking count. At the trial's conclusion, the jury found Minor not guilty on the charge of animal cruelty but found him guilty on all other charges. Subsequently, Minor filed a motion for new trial, which the trial court denied. This appeal followed.

1. Minor contends that the trial court erred in denying his motion to suppress evidence, arguing that his initial detention was unlawful because there was no reasonable articulable suspicion that he had committed a crime. He further argues that his detention while waiting for the deputies to obtain a search warrant constituted an unlawful arrest.

(a) *Initial Detention.* Minor contends that any evidence found as a result of the search of his friend's vehicle should have been suppressed because the initial detention, which occurred when Deputy Cooley's vehicle pulled into Minor's driveway behind his friend's vehicle, was not supported by a reasonable articulable suspicion that he or his friends were engaged in criminal activity. This contention is without merit.

Decisions of the United States Supreme Court have set forth three tiers of police-citizen encounters: "(1) communication between police and citizens involving no coercion or detention and therefore without the compass of the Fourth Amendment, (2) brief seizures that must be supported by reasonable suspicion, and (3) full-scale arrests that must be supported by probable cause." (Punctuation omitted.) *Whitmore v. State.*[8] During a first-tier encounter, "police may approach citizens, ask for identification, ask for consent to search, and otherwise freely question the citizen without any basis or belief of criminal activity so long as the police do not detain the citizen or convey the message that the citizen may not leave." (Punctuation omitted.) *State v. Cauley.*[9]

Here, the evidence supports a finding that Minor's initial contact with Deputy Cooley was a first-tier encounter. Although the vehicle in which Minor was a passenger was about to leave his residence, it was not moving at the time that Deputy Cooley pulled her vehicle into Minor's driveway and parked behind it. In addition, there was no evidence that Deputy Cooley had activated her vehicle's blue lights upon pulling into the driveway. "It is well established that an officer's approach of a stopped vehicle and inquiry as to what is going on does not constitute a stop or seizure and clearly falls within the realm of the first type of police-citizen encounter." (Punctuation omitted.) *Chapman v. State.*[10] See *In the Interest of A. A.*[11] (officers' approach of defendant's stopped vehicle was a first-tier encounter despite the fact that officer's vehicle was blocking the driveway); *State v. Jackson*[12] (officers' approach of defendant's parked vehicle after parking unmarked patrol car in single car driveway was a first-tier encounter). Furthermore, Minor exited his friend's vehicle and freely approached Deputy Cooley and the DFCS investigator as they approached him, and there was no evidence that Deputy Cooley restrained Minor's movements by physical force or show of authority. Under these circumstances, no reasonable suspicion was required for

---

[8] *Whitmore v. State*, 289 Ga. App. 107, 108 (657 SE2d 1) (2008).

[9] *State v. Cauley*, 282 Ga. App. 191, 196 (2) (638 SE2d 351) (2006).

[10] *Chapman v. State*, 279 Ga. App. 200, 202 (1) (630 SE2d 810) (2006).

[11] *In the Interest of A. A.*, 265 Ga. App. 369, 371-372 (1) (593 SE2d 891) (2004).

[12] *State v. Jackson*, 201 Ga. App. 810, 814 (2) (412 SE2d 593) (1991).

Deputy Cooley's initial approach to speak with the driver of the vehicle. See *Chapman*, supra, 279 Ga. App. at 202 (1); *Jackson*, supra, 201 Ga. App. at 814 (2). Given the validity of this initial approach, the driver's consent to the deputy's request to search his vehicle was also valid. See *Chapman*, supra, 279 Ga. App. at 204 (1).

(b) *Detention While Police Obtained Search Warrant.* Minor also contends that the evidence against him should have been suppressed because his detention for approximately two hours while the deputies obtained a search warrant constituted an unlawful arrest. We disagree.

Under *Terry v. Ohio*,[13] a police officer, "even in the absence of probable cause, may stop persons and detain them briefly, when the officer has a particularized and objective basis for suspecting the persons are involved in criminal activity." *Black v. State*.[14]

> The officer's action must be justified by specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion, and the officer must have some basis from which the court can determine that the detention was neither arbitrary nor harassing.

(Punctuation omitted.) Id. "Detention beyond that authorized by *Terry* is an arrest, and, to be constitutional, such an arrest must be supported by probable cause." (Punctuation omitted.) *Jackson v. State*.[15]

"[A]n arrest is accomplished whenever the liberty of another to come and go as he pleases is restrained, no matter how slight such restraint may be. The defendant may voluntarily submit to being considered under arrest without any actual touching or show of force." (Punctuation omitted.) *Hough v. State*.[16] In this matter, it is clear from the evidence that once the deputies secured the premises and required that Minor wait outside of his home while they obtained a search warrant, Minor was not free to come and go as he pleased. In fact, both Deputy Cooley and the deputy who assisted her in securing the premises testified that Minor was not allowed to leave at that point. Additionally, both deputies pursued Minor and subdued him when he attempted to go back inside his home. Furthermore, Minor's detention for approximately two hours while the deputies waited for the search warrant cannot be characterized

---

[13] *Terry v. Ohio*, 392 U. S. 1, 21 (88 SC 1868, 20 LE2d 889) (1968).

[14] *Black v. State*, 281 Ga. App. 40, 43 (1) (635 SE2d 568) (2006).

[15] *Jackson v. State*, 191 Ga. App. 439, 440 (2) (382 SE2d 177) (1989).

[16] *Hough v. State*, 279 Ga. 711, 716 (2) (a) (620 SE2d 380) (2005).

as a brief, investigatory stop. See *Jackson*, supra, 191 Ga. App. at 441 (2) (defendant's detention for nearly two hours cannot be justified as a second-tier encounter); *Schmidt v. State*[17] (defendant's 30-minute detention while officers waited for drug dog constituted an arrest); *Radowick v. State*[18] ("where detention exceeded 40 minutes, it tortures the English language to say it was a 'brief' stop or 'momentary detention' ").

The question therefore becomes whether the deputies had probable cause to arrest Minor for approximately two hours while they waited for the search warrant. "Probable cause to arrest exists where, based on objective facts and circumstances, a man of reasonable caution would believe that a crime has been or is being committed." *Grandberry v. State*.[19] "[T]he existence of probable cause must be measured by current knowledge, i.e., at the moment the arrest is made and not in hindsight." (Punctuation omitted.) *Jackson*, supra, 191 Ga. App. at 441 (2). Here, Deputy Cooley smelled the odor of raw marijuana on Minor when she initially spoke to him, and she also found marijuana seeds and stems in his friend's vehicle, which Minor had exited only moments before. Thus, under the totality of the circumstances, Deputy Cooley had probable cause at that time to arrest Minor for possession of marijuana. See *Williams v. State*;[20] *State v. Bryant*;[21] *Parks v. State*.[22]

Moreover, the deputies' pursuit of Minor after he fled into his home and shut his door was justified. It is a "basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable." (Punctuation omitted.) *Groh v. Ramirez*.[23] However, "[a]n officer may enter [a home] without a warrant if there are exigent circumstances which require the officer to act immediately." *Land v. State of Ga.*[24] See *Brigham City v. Stuart*.[25] Exigent circumstances include

> where an officer is in hot pursuit of a fleeing felon, where an officer reasonably fears the imminent destruction of evidence if entry into the residence is not immediately effected, and where an officer reasonably perceives that a suspect

---

[17] *Schmidt v. State*, 188 Ga. App. 85, 87 (372 SE2d 440) (1988) (physical precedent only).

[18] *Radowick v. State,* 145 Ga. App. 231, 238-239 (3) (244 SE2d 346) (1978) (physical precedent only).

[19] *Grandberry v. State*, 289 Ga. App. 534, 539 (2) (658 SE2d 161) (2008).

[20] *Williams v. State*, 293 Ga. App. 842, 844 (668 SE2d 825) (2008).

[21] *State v. Bryant*, 203 Ga. App. 69, 71 (416 SE2d 368) (1992).

[22] *Parks v. State*, 150 Ga. App. 446, 447 (1) (258 SE2d 66) (1979).

[23] *Groh v. Ramirez*, 540 U. S. 551, 559 (II) (124 SC 1284, 157 LE2d 1068) (2004).

[24] *Land v. State of Ga.*, 265 Ga. App. 859, 861 (1) (595 SE2d 540) (2004).

[25] *Brigham City v. Stuart*, 547 U. S. 398, 403 (II) (126 SC 1943, 164 LE2d 650) (2006).

within the dwelling poses a risk of danger to the police or others.

*Love v. State*.[26] In determining whether an officer had a reasonable basis for fearing the imminent destruction of evidence, "the appropriate inquiry is whether the facts, as they appeared at the moment of entry, would lead a reasonable, experienced officer to believe that evidence might be destroyed before a warrant could be secured." (Punctuation omitted.) *James v. State*.[27] See *Alvarado v. State*.[28]

Here, Deputy Cooley had smelled the odor of raw marijuana on Minor and had found marijuana residue in a vehicle in which Minor was a passenger. Based partially on this information, she told Minor that he had to remain outside of his home so that the deputies could secure the premises while they waited for a search warrant. Despite those instructions, Minor ran into his house without permission, shut the door behind him, and was headed toward the bathroom, carrying his fanny pack. Given these facts, the deputies reasonably believed that they needed to enter Minor's home to prevent Minor from possibly destroying evidence before a search warrant could be obtained. See *Alvarado*, supra, 271 Ga. App. at 716-717 (1); *Binkley v. State*.[29] Furthermore, Minor's flight into his home and struggle before being subdued gave the deputies probable cause to arrest him for misdemeanor obstruction of an officer, which they did. See *State v. Devine*.[30] Incident to that arrest, the deputies would have been authorized to search Minor's person, as well as the fanny pack, which had been in his possession at that time. See id.

Accordingly, the trial court did not err in denying Minor's motion to suppress evidence that was obtained as a result of his first-tier encounter with deputies and his detention while the deputies sought to obtain a search warrant.

2. Minor further contends that the trial court erred in denying his motion to suppress evidence on the ground that the search warrant for his property was not supported by probable cause. Pretermitting whether the search warrant in this matter was valid, the evidence that Minor's motion sought to suppress was lawfully seized through other means. As noted in Division 1, the contents of Minor's fanny pack, which included marijuana and a glass tube containing methamphetamine residue, would have been discovered incident to Minor's lawful arrest for obstruction of an officer. See

---

[26] *Love v. State*, 290 Ga. App. 486, 488 (659 SE2d 835) (2008).
[27] *James v. State*, 294 Ga. App. 656, 660 (670 SE2d 181) (2008).
[28] *Alvarado v. State*, 271 Ga. App. 714, 715-716 (1) (610 SE2d 675) (2005).
[29] *Binkley v. State*, 255 Ga. App. 313, 314-315 (566 SE2d 31) (2002).
[30] *State v. Devine*, 276 Ga. App. 159, 161 (622 SE2d 854) (2005).

*Devine*, supra, 276 Ga. App. at 161. The evidence found in the wooded area away from Minor's home, which we now address, was not subject to the protections of the Fourth Amendment.

> The Fourth Amendment to the United States Constitution and Article I, Section I, Paragraph XIII of the Georgia Constitution guarantee the right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures. The touchstone of Fourth Amendment analysis is whether a person has a constitutionally protected reasonable expectation of privacy. The Amendment does not protect the merely subjective expectation of privacy, but only those expectations that society is prepared to recognize as reasonable.

*Smithson v. State*.[31] "The special protection accorded by the Fourth Amendment to the people in their 'persons, houses, papers, and effects,' is not extended to open fields." (Punctuation omitted.) *Oliver v. United States*.[32] Thus, no search warrant is necessary for a search of open fields areas or for the seizure of contraband found during a search of such areas. *Smithson*, supra, 280 Ga. App. at 422; *State v. Clark*.[33] However, the land immediately surrounding and associated with the home, which was known under the common law as the curtilage, warrants the same Fourth Amendment protections that attach to the home. *Oliver*, supra, 466 U. S. at 180 (III) (A).

"At common law, the curtilage is the area to which extends the intimate activity associated with the sanctity of a man's home and the privacies of life and therefore has been considered part of the home itself for Fourth Amendment purposes." (Citation and punctuation omitted.) *Oliver*, supra, 466 U. S. at 180 (III) (A). The United States Supreme Court has held that

> curtilage questions should be resolved with particular reference to four factors: the proximity of the area claimed to be curtilage to the home, whether the area is included within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by.

*United States v. Dunn*.[34]

---

[31] *Smithson v. State*, 280 Ga. App. 421, 422 (634 SE2d 184) (2006).
[32] *Oliver v. United States*, 466 U. S. 170, 176 (II) (104 SC 1735, 80 LE2d 214) (1984).
[33] *State v. Clark*, 263 Ga. App. 480, 487 (d) (588 SE2d 254) (2003).
[34] *United States v. Dunn*, 480 U. S. 294, 301 (II) (107 SC 1134, 94 LE2d 326) (1987).

Here, the evidence showed that the items seized by the deputies that indicated that Minor was involved in the manufacture of methamphetamine were found at the end of a trail in a wooded area approximately 50 yards from Minor's house. While this area certainly was not an open field, "a thickly wooded area nonetheless may be an open field as that term is used in construing the Fourth Amendment." *Oliver*, supra, 466 U. S. at 180 (III) (A), n. 11. See *Clark*, supra, 263 Ga. App. at 484-485 (b). In addition, although the "meth lab" items were found underneath a tarp that had been fashioned into a makeshift shelter, they were not within any sort of enclosure, and the area's only other use appeared to be that of a place for Minor's dogs to run while leashed. Applying the factors set forth in *Dunn*, the wooded area in question here was not so closely tied to Minor's home as to warrant Fourth Amendment protection. See *Smithson*, supra, 280 Ga. App. at 423; *Clark*, supra, 263 Ga. App. 486 (c). Accordingly, the trial court did not err in denying Minor's motion to suppress.

*Judgment affirmed. Adams and Doyle, JJ., concur.*

DECIDED JUNE 16, 2009 ▮▮▮▮▮▮▮

*Sean J. Lowe, David J. Dunn, Jr.*, for appellant.
*Herbert E. Franklin, Jr., District Attorney, Bruce E. Roberts, Assistant District Attorney*, for appellee.