**FIRST DIVISION**
**DOYLE, C. J.,**
**PHIPPS, P. J., and BOGGS, J.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 10, 2016**

# In the Court of Appeals of Georgia

A15A2244. JACKSON v. THE STATE.

PHIPPS, Presiding Judge.

Johnifer Jackson was indicted for rape, aggravated sodomy, and making a false statement. Jackson subsequently filed a motion to suppress evidence. He also filed a plea in bar, asserting that his prior guilty plea to several misdemeanor offenses precluded this prosecution. The trial court denied both motions, and Jackson appeals. Finding no error, we affirm.

1. "In considering an appeal from a denial of a motion to suppress, this Court construes the evidence in favor of the trial court's ruling, and we review de novo the trial court's application of the law to undisputed facts."[1] So viewed, the record shows

---

[1] *Richards v. State*, 286 Ga. App. 580, 581 (649 SE2d 747) (2007) (citation and punctuation omitted).

that around 11:30 a.m. on December 13, 2012, Officer Eric Higginbotham of the Athens-Clarke County Police Department was dispatched to the Oak Hill Apartment Complex to respond to a 911 call. The 911 caller reported that a rape had possibly occurred in an apartment in Building Eight and that the suspect, who was last seen near the building, was wearing a puffy gray jacket, a gray skull cap, and blue jeans. The caller also described the suspect's race.

When Higginbotham arrived at the complex, he saw an individual matching the caller's description standing in front of Building Four. Higginbotham approached the individual, who identified himself as Jackson, and discovered that Jackson had been barred from the apartment complex. At that point, Higginbotham arrested Jackson for criminal trespass, searched him, and found a knife and an open bottle of alcohol on his person. Higginbotham then transported Jackson to the police department, where detectives were investigating the rape report.

Before speaking with Jackson, Detective Harrison Daniel interviewed the alleged rape victim and the victim's daughter, both of whom stated that the victim had returned home from work that morning, consumed several alcoholic beverages, and fallen asleep on the couch. The victim's daughter went to visit a friend while the victim was sleeping, leaving the apartment door closed but unlocked. When the

daughter returned, the apartment was locked, and she began banging on the door. A man the daughter later identified as Jackson opened the door and fled from the apartment. The daughter entered and found her mother asleep on the couch, with her panties on the floor. The daughter woke her mother, who felt as though she had been vaginally penetrated.

At approximately 2:30 p.m., Detective Daniel interviewed Jackson, who admitted that he had been in contact with the victim that day, but denied any sexual activity. Twenty minutes later, Daniel obtained a penile swab from Jackson to preserve latent DNA or forensic evidence that might be on the surface of his penis.[2] Daniel did not secure a warrant for the swab because he believed, based on his training as a sexual assault investigator, that any potential evidence was "fleeting or . . . could be compromised in a short amount of time." Specifically, such evidence could be wiped off by hands, clothing, or other means. As Daniel explained, he wanted to act quickly because he feared the evidence would be

> compromised meaning that it could no longer be on the surface that it was originally on, meaning potential DNA evidence that would, that could be on Mr. Jackson's penis at the time could have been transferred

---

[2] Daniel allowed Jackson to swab himself with sterile cotton swabs, which Daniel placed in an evidence container.

3

to another surface, could have been wiped off, could have been removed in many other ways. So it wouldn't be recoverable from that surface anymore.

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects."[3] Despite this protection, officers may gain access to a person or property by securing a warrant, obtaining consent, or through "the existence of exigent circumstances which require the officers to act immediately without warrant or consent."[4] Exigent circumstances arise when police have probable cause to believe that evidence will be removed or destroyed before a warrant can be secured.[5] In analyzing exigency, we consider "whether police had an objectively reasonable basis for fearing the imminent destruction of the evidence at issue during the time it took police to obtain a search warrant."[6] The question is whether the facts, as they appeared at the time of the search, "would lead a reasonable, experienced

---

[3] *Smith v. State*, 324 Ga. App. 542, 544 (1) (751 SE2d 164) (2013) (citation, punctuation, and emphasis omitted).

[4] Id. (citation and punctuation omitted).

[5] *James v. State*, 294 Ga. App. 656, 659 (670 SE2d 181) (2008).

[6] Id. (citation omitted).

officer to believe that evidence might be destroyed before a warrant could be secured."[7]

The trial court concluded that exigent circumstances permitted the penile swab here. We agree. Although no Georgia authority addresses this precise issue, several jurisdictions have approved similar warrantless searches and seizures. In *Kaliku v. United States*, for example, the District of Columbia Court of Appeals refused to suppress penile swab evidence obtained without a warrant because, given the delicate and easily compromised nature of DNA evidence, "there was an urgency to its collection which justified the officer's reliance on exigent circumstances, rather than seeking a court order."[8] The Texas Court of Appeals also found a warrantless penile swab reasonable where there was "a need to act before the DNA evidence could be damaged or destroyed."[9] And multiple courts – including the United States Supreme Court – have determined that, under proper circumstances, officers may take

---

[7] Id. (citation and punctuation omitted).

[8] 994 A2d 765, 780 (D. C. App. 2010).

[9] *Ontiveros v. State*, 240 SW3d 369, 372 (Tex. App. 2007).

5

fingernail scrapings from an accused or swab hands without a warrant to preserve forensic evidence.[10]

The rape investigation in this case led authorities to Jackson, who was discovered near the victim's apartment shortly after the alleged assault and fit the description of the man seen fleeing from the apartment. Although the victim was asleep during the incident, she discovered when she woke that her underwear had been removed, and she felt as though she had been vaginally penetrated. Given these circumstances, Daniel had probable cause to conclude that Jackson had assaulted the victim.[11] Furthermore, Daniel believed, based on his training and experience in sexual assault investigation, that latent DNA contained on the surface of a penis is fleeting and easily compromised. He reasonably feared that waiting to obtain a warrant for a

---

[10] See *Cupp v. Murphy*, 412 U. S. 291, 296 (93 SCt 2000, 36 LE2d 900) (1973) (given the existence of probable cause, the limited intrusion, and "the ready destructibility of the evidence," police authorized to take fingernail scrapings from defendant without a warrant); *Dardy v. State*, 123 So3d 543, 549 (Ala. Crim. App. 2012) (exigent circumstances permitted warrantless swabbing of dried blood from defendant's hands); *State v. Parker*, 282 P3d 643, 656 (Kan. App. 2012) (warrantless swabbing of defendant's hands authorized by exigent circumstances).

[11] See *Davis v. State*, 304 Ga. App. 355, 358 (1) (a) (696 SE2d 381) (2010) (police had probable cause to arrest defendant, who matched description of shooter and was located near scene of shooting).

6

penile swab risked "the imminent destruction" of any evidence in the area.[12] Accordingly, the trial court properly denied Jackson's motion to suppress.[13]

2. Jackson also argues that the trial court erred in denying his double jeopardy plea in bar. The record shows that on January 8, 2013, the Athens-Clarke County Solicitor General charged Jackson with the misdemeanor offenses of criminal trespass, carrying a concealed weapon, and open container in connection with his arrest at the Oak Hill Apartment Complex. The following month, on February 22, 2013, the assistant district attorney handling the rape case emailed the solicitor's office, asking that the misdemeanor prosecution be placed "on hold" until the rape investigation was completed. Nevertheless, the misdemeanor charges proceeded to a plea hearing, and Jackson pled guilty to the charges on March 1, 2013.

Almost one year later, Jackson was indicted for the rape and aggravated sodomy of the victim, as well as making a false statement during the sexual assault investigation. Jackson filed a plea in bar, asserting that his March 1, 2013 misdemeanor guilty pleas barred further prosecution. The trial court denied the

---

[12] *James*, supra.

[13] See id.; see also *Kaliku*, supra; *Ontiveros*, supra.

motion, concluding that because the misdemeanor and felony-related charges did not arise from the same conduct, double jeopardy was not implicated.

> Under OCGA § 16-1-7 (b), if several crimes [1] arising from the same conduct are [2] known to the proper prosecuting officer at the time of commencing the prosecution and are [3] within the jurisdiction of a single court, they must be prosecuted in a single prosecution. A second prosecution is barred under OCGA § 16-1-8 (b) (1) if it is for crimes which should have been brought in the first prosecution under OCGA § 16-1-7 (b). In order for this procedural aspect of double jeopardy to prohibit a prosecution, all three prongs must be satisfied.[14]

Crimes arise from the same conduct if they emerge "from the same transaction or continuing course of conduct, occur at the same scene, occur on the same date, and occur without a break in the action."[15] Moreover, "if it is necessary to present evidence of the one crime in order to prove the other, then the State must prosecute those charges at the same time."[16] On appeal, we will affirm the trial court's denial of a double jeopardy plea in bar if the court's findings support its conclusions.[17]

---

[14] *Johns v. State*, 319 Ga. App. 718, 718-719 (738 SE2d 304) (2013) (footnote omitted).

[15] Id. at 719.

[16] Id. (footnote omitted).

[17] Id.

8

Jackson argues that the misdemeanor and felony-related offenses arise from the same conduct because they are intertwined and each offense requires proof of the others. We disagree. Although the offenses occurred on the same date and close in time, they took place in different locations (inside a particular apartment and outside a separate building in the apartment complex). Furthermore, a significant "break in the action" occurred between the felony and misdemeanor offenses.[18] Jackson allegedly assaulted the victim, then fled the scene. Some time later, an officer saw Jackson standing in another location and discovered facts leading to the criminal trespass, open container, and concealed weapon charges. There was no continuing course of conduct here.[19]

Moreover, the State can establish each set of offenses without proving the other. Jackson notes that during the sexual assault prosecution, the State will likely offer evidence that he was located trespassing at the apartment complex, and a trial

---

[18] Id.

[19] See id. at 720 (double jeopardy did not prohibit multiple prosecutions where offenses at issue "were separate transactions, one of which had been completed prior to the other"); *Boyette v. State*, 172 Ga. App. 683, 684 (1) (324 SE2d 540) (1984) (traffic offenses and disorderly conduct involving defendant's actions after traffic stop did not arise out of same transaction because "[t]he traffic offenses were completed at a different time and at different locations").

9

of the unrelated misdemeanor offenses might have included evidence that Officer Higginbotham spotted Jackson while responding to a possible rape report. But the State does not need to prove that the unrelated misdemeanors occurred to establish that Jackson committed sexual assault or made a false statement during the sexual assault investigation. And evidence that Jackson sexually assaulted the victim or made a false statement about the assault was not necessary to convict him of the other misdemeanors.[20]

The misdemeanor and felony-related offenses in this case did not arise from the same conduct. Accordingly, the trial court properly denied Jackson's plea in bar.[21]

*Judgment affirmed. Doyle, C. J., and Boggs, J., concur.*

---

[20] See *State v. Stewart*, 317 Ga. App. 82, 84-85 (729 SE2d 478) (2012) (double jeopardy not implicated by separate prosecutions of traffic offenses and obstruction charges; although evidence that defendant had been accused of various offenses might have been necessary in both trials, State was not required to prove that defendant committed traffic offenses to obtain conviction on obstruction charges, and vice versa).

[21] See *Johns*, supra at 720; *Stewart*, supra; *Boyette*, supra.