A09A0744. LAWRENCE v. THE STATE.
(679 SE2d 94)

MIKELL, Judge.

James Mason Lawrence was indicted on charges of possession of cocaine with intent to distribute, possession of marijuana with intent to distribute, possession of psilocyn, ingestion of cocaine, and ingestion of marijuana.[1] Lawrence filed a motion to suppress, arguing that the search of his home violated his constitutional rights. At the hearing on the motion to suppress, the trial court denied Lawrence's motion. On appeal, Lawrence argues that the trial court erred because the evidence seized was the product of an illegal warrantless search and should not have been admitted under the inevitable discovery doctrine. We affirm.

> When an appellate court reviews a trial court's order concerning a motion to suppress evidence, the appellate court should be guided by three principles with regard to the interpretation of the trial court's judgment of the facts. First, when a motion to suppress is heard by the trial judge, that judge sits as the trier of facts. The trial judge hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support them. Second, the trial court's decision with regard to questions of fact and credibility must be accepted. . . .

---

[24] (Citations omitted.) *Ford v. Olympia Skate Center*, 213 Ga. App. 600, 602 (2) (445 SE2d 362) (1994).

[1] Elizabeth Martin, who is Lawrence's fiancée, was also charged but was not tried with Lawrence.

Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment.[2]

So construed, the evidence adduced at the motion to suppress hearing shows that Deputy Christopher Day of the Bartow County Sheriff's Office went to apartment I-72 of Sheffield Place Apartments at 8:15 a.m. on March 8, 2007, in response to an anonymous call about a domestic dispute. Day testified that Deputy Jonathan White was also present and that they observed a partially smoked marijuana cigarette lying on the floor next to the door of the apartment. Day heard a male and a female talking inside, but when he knocked on the door, the voices stopped. Day testified that he knocked for approximately five minutes before a female, identifying herself as Elizabeth Martin, opened the door about five or six inches. Day immediately smelled the odor of burning marijuana coming from the apartment and a cloud of smoke emanated through the cracked door.

Day told Martin the reason for the visit and asked her questions, but Martin was evasive. Martin then completely opened the door and Day asked if they could step inside. Martin replied, "sure." As they stepped into the residence, Day saw Lawrence walk from a back room and place a stick of incense in the door jamb of a hallway closet. Deputy White then asked for consent to search for other people or signs of domestic violence, which both Martin and Lawrence gave. Day testified that consent was given "real quick." After White walked through the apartment, he told Day that he saw what appeared to be cocaine in the residence. The officers placed Martin and Lawrence in hand restraints and contacted Agent Robert Jones of the narcotics division to secure a search warrant for the residence.

On cross-examination, Day acknowledged that he testified at an earlier hearing that Martin acted as if she did not want them in the apartment; that Martin and Lawrence were not the only persons with access to the hallway where the marijuana was found; that the department provides officers with consent forms for warrantless searches; and that no consent form was utilized in this case.

Like Day, White testified that a partially smoked marijuana cigarette was outside the door; that an odor of burnt marijuana wafted through the door when Martin opened it; and that Martin initially cracked the door open then opened it fully and allowed them to enter. White saw Lawrence exit and shut the door to a rear

---

[2] (Punctuation and footnote omitted.) *Esposito v. State*, 293 Ga. App. 573 (667 SE2d 425) (2008).

bedroom and then place a lit incense in the hallway. White testified that he asked Martin for consent to look around the apartment for other occupants then asked Lawrence to show him around. White observed bloody napkins beside the bed, a straw with a white powdery substance in it that appeared to be a controlled substance, and a vial containing a white, powdery substance in a trash bag. White testified that he reported what he had observed to Day. White also testified that the person who called 911 lived in apartment I-68, which was directly below Lawrence's apartment.

On cross-examination, White admitted that he did not observe any injuries on Martin or Lawrence or other evidence that a physical altercation had occurred. When questioned about the officers' entrance into the apartment, White stated that Martin told them that they could look inside. White explained that he was concerned that additional people may have been present since Day heard voices when he walked to the door. Although White testified that he did not feel threatened by either Martin or Lawrence, he recalled that his suspicions were aroused when Lawrence closed the bedroom door.

Jones, the narcotics agent, testified that when he arrived at the apartment, he immediately observed a smoky haze in the apartment and smelled a strong odor of burnt marijuana. Jones further testified that he spoke with the officers at the scene, observed Martin and Lawrence, and then completed a search warrant application and submitted it to the magistrate court. Jones returned to the apartment and executed the search warrant. Jones testified that none of the items was seized until after he returned with the warrant and that neither Martin nor Lawrence objected to the officers' presence.

Martin provided testimony pertaining to the issue of consent only. Martin testified that she did not give the officers verbal consent to enter the apartment. On cross-examination, Martin explained that it took her a long time to answer the door because she had been asleep and had to get dressed before opening the door. She admitted that she cracked the door open initially then stepped back from the door and opened it fully. Martin maintained, however, that she never told the officers that they could look around the apartment.

At the hearing on the motion to suppress, the state argued that the smell of the burning marijuana and the fact that several minutes passed before the door was opened created exigent circumstances to justify a warrantless search. Moreover, the state maintained that even if there were questions about the lawfulness of proceeding without a warrant, the inevitable discovery doctrine warranted the admission of the items seized into evidence. The trial court did not enter a written order but ruled on the motion at the hearing, stating

as follows:

> [The prosecutor] nails it when he says that the Magistrate could have stopped at this point of the affidavit. I'm skipping the who was involved, skipping the first six lines of the affidavit. "Deputy White spoke with the complainant of the call while Deputies Day and Pruitt responded to the residence in question located at address. Deputy Day immediately observed what he believed to be a marijuana cigarette lying next to the domicile next to the door. Deputy Day knocked on the door and after approximately a five-minute wait a . . . female subsequently identified as . . . Martin answered the door. Deputies Day and Pruitt immediately smelled the strong odor of burnt marijuana." Boom. That's all it takes to get a search warrant. Any magistrate in the world would have issued one. I deny your motion.[3]

On appeal, Lawrence assumes that the trial court denied the motion to suppress based on the inevitable discovery doctrine and challenges the applicability of the doctrine. However, we find that the trial court's denial of the motion to suppress was appropriate because the officers' warrantless entry was authorized under these facts. It follows that the warrant was not tainted by the officers' warrantless entry into the residence, and therefore, the objects seized pursuant thereto need not be suppressed.

Considering the totality of the circumstances, the officers' entry into the residence was supported by probable cause to search the residence. This conclusion, however, does not end the inquiry. "It is elementary that probable cause, however well founded, can provide no justification for a warrantless intrusion of a person's home absent a showing 'that the exigencies of the situation made that course imperative.' "[4] "[W]hether exigent circumstances existed is a question of fact, and . . . we review police actions from the standpoint of a hypothetical reasonable officer and must measure those actions from the foresight of an officer acting in a quickly developing

---

[3] At no point did the trial court make any finding as to whether it believed the officers' testimony over Martin's or vice versa on the issue of whether the officers were given consent to search the premises. Additionally, the trial court made no finding upon whether exigent circumstances were created, justifying an entry once Martin did not immediately open the door after Day continued to knock and announce that the officers were from the sheriff's office.

[4] (Citations omitted.) *Clare v. State*, 135 Ga. App. 281, 284 (2) (217 SE2d 638) (1975). See also *Bogan v. State*, 165 Ga. App. 851, 852 (2) (303 SE2d 48) (1983) ("no amount of probable cause can justify a warrantless search absent exigent circumstances") (citation and punctuation omitted).

situation and not from the hindsight of which judges have benefit."[5] Based on the factors discussed above, the evidence authorized the warrantless entry into the residence.[6]

*Judgment affirmed. Johnson, P. J., and Ellington, J., concur.*

DECIDED MAY 21, 2009.

*Dickerson & Van Sant, Jeffery L. Dickerson*, for appellant.
*T. Joseph Campbell, District Attorney, Elizabeth M. York, Assistant District Attorney*, for appellee.

---

[5] (Citation omitted.) *Bolton v. State*, 258 Ga. App. 217, 219 (573 SE2d 479) (2002).
[6] See *Alvarado v. State*, 271 Ga. App. 714, 715-716 (1) (610 SE2d 675) (2005).