### A10A1770. HESRICK v. THE STATE.

(707 SE2d 574)

ELLINGTON, Chief Judge.

Following a bench trial, the Superior Court of Chatham County found David Hesrick guilty beyond a reasonable doubt of sexual exploitation of children, OCGA § 16-12-100 (b) (8), and two counts of making false statements to law enforcement officers, OCGA § 16-10-20. He appeals, contending that the trial court erred in denying his motion to suppress evidence seized during a warrantless search of his home. For the following reasons, we affirm.

> Because the trial court sits as the trier of fact when ruling on a motion to suppress or a motion in limine, its findings based upon conflicting evidence are analogous to a jury verdict and should not be disturbed by a reviewing court if there is any evidence to support them. When we review a trial court's decision on such motions to exclude evidence, we construe the evidence most favorably to up-hold the findings and judgment, and we adopt the trial court's findings on disputed facts and credibility unless they are clearly erroneous. When the evidence is uncontroverted and no question of witness credibility is presented, the trial court's application of the law to undisputed facts is subject to de novo appellate review. With mixed questions of fact and law, the appellate court accepts the trial court's findings on disputed facts and witness credibility unless clearly erroneous, but independently applies the legal principles to the facts.

(Citations and punctuation omitted.) *State v. Tousley,* 271 Ga. App. 874 (611 SE2d 139) (2005). Further, "[w]hen reviewing a trial court's ruling on a motion to suppress, we may consider trial testimony in addition to the testimony submitted during the motion to suppress hearing." (Citation and punctuation omitted.) *Postell v. State,* 279 Ga. App. 275, 276 (1) (630 SE2d 867) (2006).

Viewed in such light, the evidence in the record shows that, on November 28, 2008, two officers with the Savannah-Chatham Metropolitan Police Department were dispatched to the scene of a domestic dispute. Upon arrival, they encountered a man, Cody Hoffman, in the front yard. Hoffman was the person who had called the police, and he told the officers that he and the homeowner, Hesrick, had been in a fight earlier that day and that Hesrick had "basically kicked" him out of the residence.

The officers knocked on the front door, and Hesrick unlocked the door and let them into the house. Hesrick told the officers that Hoffman had broken his (Hesrick's) glasses and he showed them a bruise around his eye, but he also admitted that the altercation had taken place several days earlier. Hesrick confirmed that Hoffman had been staying at the house "off and on for quite some time," and said that he wanted the officers to remove Hoffman from his house. The officers explained to Hesrick the legal process of eviction, and Hesrick stated that he would take care of that the next morning.

While Hesrick stood in the doorway to the house, the officers went outside and spoke to Hoffman again, telling him that Hesrick wanted to evict him. Hoffman responded that he had already made arrangements to leave the house, but then told the officers that "things were much more serious than . . . what [the officers] were called for that day." When asked what he meant, Hoffman said that, earlier that day, he had seen Hesrick looking at child pornography on his computer, that he had told Hesrick that the pictures were illegal, and that an argument had ensued, leading to a fight. Hoffman told the officers that Hesrick had "gotten in trouble with child pornography in Chicago" before he moved to Savannah. Hoffman also told the officers that, when Hesrick learned that he had called the police, Hesrick removed the computer's external hard drive and put it in a shed in the backyard. Hoffman then warned the officers that, if they asked Hesrick about the child pornography, Hesrick would destroy the evidence.

At some point while the officers were talking to Hoffman, Hesrick retreated back into the house and locked the front door. After hearing Hoffman's allegations about the child pornography, the officers decided to talk to Hesrick again and knocked on the front door. After a few minutes, Hesrick opened the door and let the officers inside the front room, and the officers asked Hesrick where he was from. According to one officer, Hesrick immediately became "pissed off" and said that he was from Chicago. The officers then asked Hesrick if he had child pornography on his computer. Hesrick asked the officers what constituted child pornography, and the officers explained that it would be images of children under the age of 18 in "explicit acts, without clothing." According to the officers,

Hesrick stated that "he did have that on his computer" and that he had been looking at it. When asked if he would show them the pictures, however, Hesrick responded that he did not know what material they were talking about and that they would need a search warrant to find out any further information.

At that point, one of the officers contacted a sergeant with the Special Victims Unit, explained the situation, and asked for guidance, and the sergeant told him to seize all of the computers and other media that were in plain view due to the possibility that Hesrick was going to destroy the evidence. The officers seized a laptop computer that they saw in the corner, as well as a desktop computer that was in another room, and locked them in their patrol car. The officers walked through the house looking for any other computer equipment that was sitting in plain view, but they found nothing. Although one of the officers also looked inside the door to the backyard shed, he did not see an external hard drive. When the officers asked Hesrick about the external hard drive, he denied having one. Hesrick then told the officers that, before they were able to get a search warrant to look for additional evidence, he would destroy the evidence.

On December 2, 2008, a detective with the police department's Special Victims Unit obtained a search warrant for Hesrick's house.[1] The search warrant authorized the seizure of

> All DIGITAL Data storage devices to include COMPUTER HARD DRIVES, USB drive, digital cameras, video cameras, storage cards, tapes and computer disks (DVD's, CD's, FLOPPY DISKS) that may store data on them[ ] which is tangible evidence of the crime of Sexual[ ] Exploitation of Minors[,] OCGA [§] 16-12-100.

The detective and other officers executed the search warrant on December 3. While the other officers were searching the house, Hesrick told the detective that he had "got[ten] rid of" the external hard drive, but could not remember where he had taken it. Hesrick also volunteered that he had started collecting child pornography 40 years earlier, but had now decided to "get rid of it" because "society ... didn't accept it." During the conversation, another officer approached and asked Hesrick about a box of several broken

---

[1] At that time, the Forensic Unit had not yet processed or analyzed the two computers that had been seized on November 28; thus, the application for the search warrant was not based upon any data obtained from the computers. Moreover, Hesrick does not challenge on appeal the validity of the search warrant or the admissibility of the items seized pursuant to the search warrant.

computer "floppy disks" that the officer had found in the shed. Hesrick admitted that he was trying to "clean up all of his computers" and that, in the process, he had destroyed the floppy disks.

After considering all of the evidence presented, the trial court made the following findings of fact: that, prior to entering Hesrick's residence, the officers had a reasonable suspicion that child pornography was inside; that Hesrick voluntarily allowed the officers to enter his house; that, while speaking with the officers, Hesrick admitted possessing child pornography; and that Hesrick told the officers that the materials could be destroyed. The court concluded that these facts constituted exigent circumstances that authorized the warrantless seizure of both computers.[2]

1. On appeal, Hesrick contends that the trial court erred in denying his motion to suppress the items seized from his home without a warrant or his consent. He argues that the State failed to prove that the items were lawfully seized pursuant to an exception to the warrant requirement.[3]

> It is a basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable. Nevertheless, because the ultimate touchstone of the Fourth Amendment is "reasonableness," the warrant requirement is subject to certain exceptions.

(Citations and punctuation omitted.) *Brigham City v. Stuart*, 547 U. S. 398, 403 (II) (126 SC 1943, 164 LE2d 650) (2006). Among these exceptions is when exigent circumstances exist which require the immediate action of law enforcement officers, in other words, when "the exigencies of the situation make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment." (Citation and punctuation omitted.) Id. at 403-404 (II) ("An action is 'reasonable' under the Fourth Amendment, regardless of the individual officer's state of mind, as long as the circumstances, viewed *objectively*, justify the action. The officer's subjective motivation is irrelevant.") (citations and punctuation omitted; emphasis in original). One example of such an

---

[2] The trial court also stated that it had viewed a sample of the materials found on the computers and, based on all of the evidence presented, Hesrick was guilty beyond a reasonable doubt of the crimes charged. Hesrick does not challenge the sufficiency of the evidence to support these convictions on appeal.

[3] As shown above, the evidence shows that the officers twice entered Hesrick's home pursuant to his consent, and Hesrick does not challenge the legality of the warrantless entries on appeal. Instead, the only issue is whether the officers' warrantless seizure of the computers was lawful.

exigent circumstance is when the circumstances preceding an officer's warrantless search and seizure demonstrate that the officer had an objectively reasonable basis for fearing the imminent destruction of the evidence at issue before a search warrant could be obtained. *James v. State*, 294 Ga. App. 656, 658-660 (670 SE2d 181) (2008) (noting that the exigent circumstances exception applies not only to cases involving narcotics, but also to those involving any evidence that can be removed from the premises or destroyed before a warrant can be obtained).

"Of course, the burden of proving an exception to the warrant requirement lies with the Government." (Citation omitted.) *United States v. Holloway*, 290 F3d 1331, 1337 (III) (A) (11th Cir. 2002).

> Whether exigent circumstances existed is a question of fact, and we review police actions from the standpoint of a hypothetical reasonable officer and must measure those actions from the foresight of an officer acting in a quickly developing situation and not from the hindsight of which judges have benefit.

(Punctuation and footnote omitted.) *Lawrence v. State*, 298 Ga. App. 94, 97-98 (679 SE2d 94) (2009).

Viewing the evidence presented from the perspective of the officers at the time they were confronted with this rapidly developing situation, we find no error with the trial court's conclusion that the warrantless seizure of the computers was authorized by exigent circumstances, specifically, the objectively reasonable concern that the seizure was necessary to prevent Hesrick's imminent destruction of the computer images of child pornography, images that were vulnerable to quick destruction, irreplaceable, and essential to proving that a crime had been committed.[4] Accordingly, the trial court did not err in denying Hesrick's motion to suppress.

2. Given our decision in Division 1, supra, Hesrick's contention

---

[4] See *Lawrence v. State*, 298 Ga. App. at 95, 97-98 (When responding to a call about a domestic dispute, officers observed a partially smoked marijuana cigarette lying just outside the apartment door and, when they knocked on the door, voices inside the apartment abruptly stopped. After the officers knocked for about five more minutes, a woman opened the door about five or six inches, and the officers immediately smelled the odor of burning marijuana and saw a cloud of smoke emanate from the door. Viewing these facts from the officers' perspective at that moment, this Court concluded that exigent circumstances authorized the officers' warrantless entry into the apartment.); *James v. State*, 294 Ga. App. at 660 (This Court acknowledged that rape cases often depend on evidence that is vulnerable because it can be easily altered or destroyed. Therefore, the vulnerability of the evidence, in conjunction with the defendant's refusal to respond to the police, sufficiently supported the officer's concern that the defendant would attempt to destroy the evidence in the time it would take to secure a search warrant.).

that the State failed to prove that the items were in the officers' plain view (and, thus, were lawfully seized pursuant to that exception to the warrant requirement) is moot.

*Judgment affirmed. Andrews and Doyle, JJ., concur.*

DECIDED MARCH 10, 2011.

*Jennifer R. Burns*, for appellant.

*Larry Chisolm, District Attorney, Emily C. Thomas, Assistant District Attorney*, for appellee.