**SECOND DIVISION**
**BARNES, P. J.,**
**MILLER and RAY, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**November 7, 2013**

# In the Court of Appeals of Georgia

A13A1119. SMITH v. THE STATE.

MILLER, Judge.

Chad Andrew Smith was charged by accusation with possession of methamphetamine (OCGA § § 16-13-30 (a)), manufacture of marijuana (OCGA § § 16-13-30 (j) (1)), and possession of less than one ounce of marijuana (OCGA § § 16-13-30 (j) (1)). Smith filed a motion to suppress the marijuana, methamphetamine, and drug related items found in his yard and home, as well as the statements he made to police officers. The trial court denied Smith's motion, and this Court granted his application for interlocutory appeal. Smith contends that the trial court erred in denying his motion to suppress. For the reasons set forth below, we agree.

> In considering an appeal from denial of a motion to suppress, this Court construes the evidence in favor of the trial court's ruling, and we review de novo the trial court's application of the law to undisputed

facts. Additionally, [ ] we must defer to the trial court's determination on the credibility of witnesses, and the trial court's ruling on disputed facts must be accepted unless it is clearly erroneous.

(Citation and punctuation omitted.) *Lindsey v. State*, 287 Ga. App. 412 (651 SE2d 531) (2007).

Here, the trial court denied Smith's motion to suppress without explanation and, therefore, there are no findings of fact. Nevertheless, viewed in favor of the trial court's decision, the evidence showed that officers of the Lookout Mountain Drug Task Force received an anonymous tip that marijuana was growing in front of a residence located at 69 Katie Lane in Lafayette. The next day, Agent Doyle, accompanied by three other agents, drove to that address to investigate. The agents pulled their car into the driveway and parked. A house was located at the front of the property, with a double wide trailer located behind it at the end of the driveway. The house was approximately 25 to 30 feet from the front porch of the trailer. When the agents drove into the driveway, Agent Brown noticed what he believed to be marijuana plants growing in a plastic tub pushed up against the rear wall of the house. One of the plants was 10 to 12 inches tall and the others were smaller. There is no evidence that the plants were visible from the road, and the agents could not see the

2

plants until they pulled into the driveway. The agents approached the house and knocked on the door, but then noticed that the house was being used as a storage building.

Doyle and another agent then went to the front porch of the trailer and knocked on the front door, while the other two agents waited in the car. From his position on the front porch, Doyle could also see the marijuana plants. After knocking on the door, Doyle heard a commotion inside and noticed that the blinds had been pulled back briefly. At this point, Doyle began to announce that they were law enforcement and the two agents in the car went to the trailer's back door to prevent escape.

All the agents then entered the unlocked back door, announcing loudly that they were law enforcement, and conducted a safety sweep in order to secure any persons there. At this point, there was concern for officer safety because of the fact that firearms and other weapons are frequently found in connection with narcotics investigations. Upon entering the trailer, the agents located Smith and his girlfriend in Smith's bedroom. When asked why they did not answer the knock at the front door, they stated that they were asleep and did not hear the knocking. The agents noted that Smith and his girlfriend appeared to have been awake for some time and that there was a smoking cigarette in an ashtray.

3

Doyle said that, sometime between observing the marijuana plants and entering the trailer, the agents had made the decision to seek a search warrant and had contacted their administrative assistant to draft the warrant. After entering the trailer, the agents took Smith and his girlfriend out onto the front porch, but then moved them back inside so Smith could sit down. Based on the marijuana plants spotted outside, Doyle advised Smith and his girlfriend of their *Miranda* rights. Doyle then asked Smith about the marijuana plants. Smith initially denied having any knowledge, but later said that the plants were his and were for personal use only. Smith went on to say he had planted them a couple of months ago and knew there was a possibility he could get in trouble, but he was not planning on getting caught.

Approximately 45 minutes to an hour after the agents had applied for a warrant, they were advised that one had been granted, although they did not see it and did not bring it to the location prior to the search. During the ensuing search of the trailer, agents found a green case containing a glass pipe with white residue that tested positive for methamphetamine; two bud grinders containing marijuana residue; a set of finger scales; a glass smoking pipe containing marijuana residue; a sandwich bag containing white residue; and a water bong containing marijuana residue.

4

1. Smith argues that the trial court erred in denying his motion to suppress because the State did not carry its burden to prove the validity of the warrant in that the affidavit supporting it was not tendered into evidence. We agree.

"The right of the people to be secure in their persons, *houses*, papers, and effects against unreasonable searches and seizures shall not be violated[.]" (Citations omitted; emphasis supplied.) *Espinoza v. State*, 265 Ga. 171, 172 (2) (454 SE2d 765) (1995). Officers may gain "access justified by the Fourth Amendment by obtaining a warrant, obtaining consent, or by the existence of exigent circumstances which require the officer[s] to act immediately without warrant or consent." *State v. David*, 269 Ga. 533, 535-536 (2) (501 SE2d 494) (1998). Where officers obtain a search warrant, it must be based on a showing of "probable cause supported by oath or affirmation particularly describing the place or places to be searched and the persons or things to be seized." (Citations omitted.) *Espinoza*, supra, 265 Ga. at 172 (2) .

Pursuant to OCGA § § 17-5-30 (a), an accused may seek to suppress evidence based upon the grounds that the search and seizure without a warrant was illegal; the warrant was insufficient because there was not probable cause; or the warrant was illegally executed. Further, "the burden of proving that the search and seizure were

lawful shall be on the [S]tate." OCGA § § 17-5-30 (b). Smith challenged the search and seizure as illegal and not based on probable cause.

> [W]hen a motion to suppress is made on one of the three statutory grounds, challenging the validity of a search and seizure with a warrant, the burden of showing that the search and seizure were lawful shall be on the state. This burden upon the state is satisfied by production of the warrant *and its supporting affidavit, and* by showing either by those documents or by other evidence that the warrant is not subject to the statutory challenge alleged (i.e., the warrant is sufficient on its face, there was probable cause for its issuance, or the warrant was legally executed).

(Emphasis supplied.) *State v. Slaughter*, 252 Ga. 435, 439 (315 SE2d 865) (1984).

Once the State meets its initial burden of producing the affidavit and other evidence showing the validity of the warrant, the burden shifts to the defendant to produce evidence and support his challenge to the lawfulness of the warrant. *Watts v. State*, 274 Ga. 373, 375-376 (2) (522 SE2d 823) (2001).

The factual situation in this case is similar to that in *Gates v. State*, 229 Ga. App. 766 (495 SE2d 113) (1997). There, officers obtained permission from Gates's next door neighbor to observe Gates's back yard from the neighbor's yard. From that vantage point, the officers observed nine marijuana plants growing in Gates's back

6

yard. Officers obtained a warrant for Gates's house and yard and seized, in addition to the marijuana plants, cocaine and drug paraphernalia from his home.[1] Id. at 766-767. There, as here, the State failed to produce the affidavit presented to the magistrate in support of the warrant. Citing *Slaughter*, supra, this Court reiterated that "the State is required to introduce the affidavit supporting the issuance of the search warrant in response to a motion to suppress challenging the sufficiency of the affidavit and validity of the warrant." *Gates*, supra, 229 Ga. App. at 767.

The State in *Gates* argued that the marijuana plants were in plain view and that, under the "independent source" doctrine, the fact that the subsequent seizure under a warrant may have been defective should not require suppression of the evidence. Id. While acknowledging that the officers observed the marijuana from a place they were legally entitled to be, this Court noted that

> while the characterization of an observation as a non-search plain view situation settles the lawfulness of the *observation* itself, it does not determine whether a *seizure of the observed object* would likewise be lawful. Not only must the officer be lawfully located in a place from which the object can be plainly seen, but he or she must also have a lawful right of access to the object itself.

---

[1] We note that, in this case, the evidence is unclear whether the marijuana plants were seized before or after the warrant was issued.

7

(Citations and punctuation omitted; emphasis supplied.) *Gates*, supra, 229 Ga. App. 768 (a). This Court concluded that a warrant was necessary to seize the marijuana and, because the affidavit had not been produced by the State, all of the evidence had to be suppressed. Id. at 768-769.

Although the State argues valiantly that *Slaughter* does not require producing the affidavit, that *Gates* was incorrectly decided, and that the State can fulfill its burden by producing testimony at the hearing on the motion to suppress, this argument is unavailing. The Georgia Supreme Court and this Court have repeatedly reaffirmed the need for the State to produce at least the warrant and supporting affidavit in order to meet its initial burden. See *Watts*, supra, 274 Ga. at 375-376 (2); *Davis v. State*, 266 Ga. 212, 213 (465 SE2d 438) (1996); *Sosebee v. State*, 303 Ga. App. 499, 501-502 (1) (693 SE2d 838) (2010). Therefore, the State having failed to produce the affidavit, the trial court erred in denying Smith's motion to suppress.

2. As stated above, it is unclear whether the marijuana plants were seized prior to or after the warrant was issued. Therefore, we consider whether there is any basis upon which the plants could have been seized without a warrant.

8

Pretermitting the issue of whether the driveway is included in the curtilage of the house and trailer,[2] it is apparent that the plants could not have been seized without walking across the yard of the house and trailer, which was within the curtilage and protected by the Fourth Amendment and Ga. Const. Art. I, Sec. I, Par. XIII. *Espinoza*, supra, 265 Ga. at 172-173 (2). "The Fourth Amendment protects this area, known as the curtilage, as an exception to the open fields doctrine. The Georgia Supreme Court has defined curtilage as 'the yards and grounds of a particular address, its gardens, barns and buildings." (Citations and punctuation omitted.) Id. at 173 (2).

Since the officers were within the curtilage, we consider whether the agents, having observed the plants in plain view and identified them as marijuana, had a lawful right of access to them. See *Galindo-Eriza v. State*, 306 Ga. App. 19, 21 (1) (701 SE2d 516) (2010). "An officer gains lawful access to an item in plain view by obtaining a search warrant, obtaining consent to search, or the existence of exigent circumstances." (Citation and punctuation omitted.) Id. at 21 (1). "The presence of contraband without more does not give rise to exigent circumstances." (Punctuation

---

[2] Fourth Amendment does not cover police observations from places where visitors are expected, such as walkways, driveways, and porches. See *Espinoza*, supra, 265 Ga. at 173 (2).

9

and footnote omitted.) *State v. Gray*, 285 Ga. App. 124, 128 (2) (645 SE2d 598) (2007).

Here, there is no evidence that, at the time the marijuana was seen and subsequently seized, the agents knew who, if anyone, was in the house or trailer, or even who owned the property.

> Even with probable cause, absent exigent circumstances or proper consent, warrantless searches and seizures within a home [or curtilage] by officers in pursuit of their traditional law enforcement duties are presumptively unreasonable. . . . Thus, even if officers have probable cause to investigate a crime, without a warrant, exigent circumstances, or proper consent, they may not enter a home or curtilage.

(Citations and punctuation omitted.) *Corey v. State*, 320 Ga. App. 350, 353 (1) (739 SE2d 790) (2013).

Since the affidavit was not produced, and there was no evidence of consent or exigent circumstances, the seizure of the marijuana plants was illegal.

*Judgment reversed. Barnes, P. J., and Ray, J., concur.*