**FOURTH DIVISION**
**DILLARD, P. J.,**
**RICKMAN, P. J., and BROWN, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**February 22, 2021**

# In the Court of Appeals of Georgia

A20A1704. LEWIS v. THE STATE.

DILLARD, Presiding Judge.

Following a trial by jury,[1] Timothy Omar Lewis was convicted of possessing marijuana with intent to distribute, possessing a controlled substance with intent to distribute, and possessing tools for the commission of a crime.[2] Lewis now appeals, arguing that (1) the trial court erred in denying his motion to suppress evidence, (2) there was insufficient evidence as to possession of a controlled substance, and (3) the trial court erred in sentencing him. Because we agree that the trial court erred in denying the motion to suppress evidence, we reverse Lewis's convictions.

---

[1] Lewis proceeded *pro se* at trial.

[2] Lewis was acquitted on a charge of possessing cocaine with intent to distribute.

Viewed in the light most favorable to the jury's verdict,[3] the record shows that on the evening of March 23, 2016, David Gratton—an officer with the Savannah Police Department—was responding to a non-emergency call when he passed through his assigned precinct. While doing so, he observed Lewis (with whom he was familiar) sitting on the side porch of his home with money in hand and making motions as if weighing something on a scale. And based on those observations, Gratton believed Lewis was weighing and portioning drugs; so, he stopped his vehicle and got out to watch Lewis from the street before calling for backup.

When the backup officer arrived, Gratton called out to Lewis, who responded "oh shit" and stuffed what he had been weighing under the stairwell. Lewis then told the officers—who were standing on the other side of the chain-length fence surrounding his house—not to come onto the property.

Lewis walked toward the officers, demanded to speak to a supervisor, and engaged with backup while Gratton walked onto an abandoned property beside Lewis's house. Standing on the other side of the chain-length fence separating

---

[3] *See, e.g.*, *Freeman v. State*, 329 Ga. App. 429, 431 (1) (765 SE2d 631) (2014) ("[W]hen a criminal conviction is appealed, the evidence must be viewed in the light most favorable to the verdict, and the appellant no longer enjoys a presumption of innocence." (punctuation omitted)).

Lewis's property from the one next door, Gratton was mere feet away from where Lewis had been sitting on the side of his house. And on the side steps of Lewis's house, Gratton could see a scale with marijuana residue and residue of a white powdery substance, which he believed to be cocaine. At this point, the supervisor that Lewis requested arrived on the scene. Then, with the approval of the supervisor, officers entered Lewis's yard and retrieved the scales from the steps and multiple bags of drugs that had been pushed under the house when Lewis noticed the officers at the fence.

Lewis was subsequently convicted of possessing marijuana with intent to distribute, possessing a controlled substance with intent to distribute, and possessing tools for the commission of a crime. This appeal follows the denial of his motion for a new trial.

1. Lewis argues that the trial court erred by denying his motion to suppress evidence. Specifically, he challenges the trial court's finding that the property from which officers observed the relevant contraband was "apparently abandoned." He further takes issue with the trial court's finding that the officers lawfully seized the contraband from his property without a warrant under exigent circumstances.

3

When we consider the denial of a motion to suppress, we construe "the evidence in favor of the trial court's ruling, and we review de novo the trial court's application of the law to undisputed facts."[4] Furthermore, we must defer to the trial court's "determination on the credibility of witnesses, and the trial court's ruling on disputed facts must be accepted unless it is clearly erroneous."[5] With this in mind, we turn to Lewis's contentions on appeal.

(a) *Abandoned Property*. Lewis challenges the officers' entrance onto the neighboring property to get a better view of what he was doing, arguing that the evidence did not establish the property was "apparently abandoned." But Lewis never argued to the trial court that the officers lacked permission to enter the neighboring property and, thus, did not view the contraband from a location in which they were legally entitled to be.[6] Nor did he argue to the trial court, as he forcefully does now

---

[4] *Smith v. State*, 324 Ga. App. 542, 542 (751 SE2d 164) (2013) (punctuation omitted).

[5] *Id.* (punctuation omitted).

[6] *See Gates v. State*, 229 Ga. App. 766, 767-68 (a) (495 SE2d 113) (1997) ("The [S]tate correctly asserts that a criminal defendant has no privacy right in contraband or instrumentalities of a crime which are in 'open view' and exposed to the public or which a police officer views from a place he is legally entitled to be. In this case, the officers observed the marijuana from a place they were legally entitled to be, because they had obtained defendant's neighbor's consent to enter that

on appeal, that the body-cam video does not support a finding that the property next door was abandoned—leading to the conclusion that officers lacked permission to be on the neighboring property. To the contrary, in the trial court, he only asserted that the officers improperly intruded onto *his* property without a search warrant. Nevertheless, in denying Lewis's motion to suppress, the trial court made a finding of fact that the neighboring home was "apparently abandoned."

So, because Lewis never argued to the trial court that the officers lacked permission to occupy the neighboring property,[7] he arguably failed to preserve this issue for appeal.[8] But even if we were inclined to reach the merits of this argument

---

property." (citations & punctuation omitted)); *State v. Echols*, 204 Ga. App. 630, 631 (420 SE2d 64) (1992) ("Consequently, a police officer who observes contraband in plain view is entitled to seize it, so long as he is at a place where he is entitled to be, i.e., so long as he has not violated the defendant's Fourth Amendment rights in the process of establishing his vantage point." (punctuation omitted)); *see also State v. David*, 269 Ga. 533, 535 (2) (501 SE2d 494) (1998) ("[T]he plain view doctrine authorizes seizure of illegal or evidentiary items visible to a police officer only if the officer's access to the object itself has some prior Fourth Amendment justification.").

[7] Lewis did not challenge the trial court's denial of the motion to suppress in his motion for new trial and, thus, did not raise these particular arguments at that time either.

[8] *See, e.g.*, *Harris v. State*, 210 Ga. App. 366, 367 (1) (436 SE2d 231) (1993) ("The motion to suppress filed in the trial court did not raise the issue of suppression of the field sobriety tests, the record does not show that this issue was raised in arguments or briefs on the suppression motion in the trial court, and the trial court did

(as a result of the trial court's finding that the property was abandoned), Lewis's contention is a nonstarter. Officer Gratton unequivocally testified that the neighboring property was abandoned and that—as part of his patrol duties—he regularly checks on this house by walking around it to ensure no criminal activity is taking place. He further testified to personally dealing with criminal activity at the house because people would "hang out" and "squat" there, and he knew the interior of the home was destroyed, uninhabitable, and dirty. As a result, Gratton was intimately familiar with the abandoned house next to Lewis's dwelling because of his daily patrol duties to ensure that it is not inhabited by squatters or used to conduct illegal activity.

Suffice it to say, the trial court obviously credited this testimony when it made its finding of fact that the neighboring house was "apparently abandoned." Additionally, the trial court noted that officers moved freely about the property without any indication of a lawful occupant complaining. The trial court did not clearly err, then, in finding that the neighboring house was abandoned[9] or,

not rule on this issue in its order denying [the] motion to suppress. Accordingly, the enumeration presents nothing for appellate review.").

[9] *See State v. Jennings*, 318 Ga. App. 237, 239 (733 SE2d 522) (2012) ("We are a court for the correction of errors of law, and we cannot draw a different

accordingly, that the officers permissibly entered the neighboring property from which they observed the contraband.[10]

(b) *Exigent Circumstances*. Lewis also challenges the trial court's conclusion that the officers were authorized to enter the "curtilage"[11] of his property to confiscate the contraband which they viewed from the abandoned property next door. He argues

---

inference from the evidence or make a credibility determination contrary to the one made by the trial court, even if we disagree, as long as there is evidence in the record to support the trial court's findings." (punctuation omitted)).

[10] *See supra* note 6.

[11] "Curtilage" is defined as "the yards and grounds of a particular address, its gardens, barns, and buildings." *Landers v. State*, 250 Ga. 808, 809 (301 SE2d 633) (1983) (punctuation omitted); *accord Corey v. State*, 320 Ga. App. 350, 354 (1) (a) (739 SE2d 790) (2013); *see also Florida v. Jardines*, 569 U.S. 1, 7 (II) (A) (133 SCt 1409, 185 LE2d 495) (2013) ("While the boundaries of the curtilage are generally 'clearly marked,' the 'conception defining the curtilage' is at any rate familiar enough that it is 'easily understood from our daily experience.' . . . . [And] [t]he front porch is the classic exemplar of an area adjacent to the home and to which the activity of home life extends." (citation & punctuation omitted)); *Oliver v. United States*, 466 U.S. 170, 180 (III) (A) (104 SCt 1735, 80 LE2d 214) (1984) ("[C]ourts have extended Fourth Amendment protection to the curtilage; and they have defined the curtilage, as did the common law, by reference to the factors that determine whether an individual reasonably may expect that an area immediately adjacent to the home will remain private."); *see also A New Law Dictionary* 203 (Giles Jacob ed. 1732) (defining "curtilage" as "a Court, Yard, Back[s]ide, or Piece of Ground lying near or belonging to a Dwelling hou[s]e.").

that exigent circumstances did not exist to support the officers' entry onto his property without a warrant. On this point, we agree.

It is true that "[n]ot only must the officer be lawfully located in a place from which the object can be plainly seen,"[12] as we determined the officers were in Division 1 (a), but he or she must also have "a lawful right of *access* to the object itself."[13] Indeed, under the Fourth Amendment to the United States Constitution,[14] police officers are "prohibited from entering a person's home or its curtilage without

---

[12] *Gates*, 229 Ga. App. at 768 (a) (punctuation omitted); *see supra* note 6.

[13] *Gates*, 229 Ga. App. at 768 (a) (emphasis supplied); *see Carranza v. State*, 266 Ga. 263, 266 (1) (467 SE2d 315) (1996) ("It is elementary that probable cause, however well founded, can provide no justification for a warrantless intrusion of a person's home absent a showing that the exigencies of the situation made that course imperative." (punctuation omitted)).

[14] *See* U.S. CONST. amend. IV ("The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."); *see also* GA. CONST. art. 1, § 1, ¶ XIII ("The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue except upon probable cause supported by oath or affirmation particularly describing the place or places to be searched and the person or things to be seized.").

8

a warrant absent consent or a showing of exigent circumstances."[15] This is true even when items of contraband are visible within an officer's plain view.[16]

In this case, the trial court concluded that the officers had a lawful right to access the contraband they viewed from the neighboring property without first obtaining a warrant because they operated under exigent circumstances. An "exigent circumstances" analysis requires a determination of "whether police had an objectively reasonable basis for fearing the imminent destruction of the evidence at issue during the time it took police to obtain a search warrant."[17] And the appropriate

---

[15] *State v. Gray*, 285 Ga. App. 124, 126 (1) (645 SE2d 598) (2007); *accord State v. Gravitt*, 289 Ga. App. 868, 870 (2) (a) (658 SE2d 424) (2008); *see State v. David*, 269 Ga. 533, 535 (2) (501 SE2d 494) (1998) ("The officer gains access [to make a seizure] justified by the Fourth Amendment by obtaining a warrant, obtaining consent, or by the existence of exigent circumstances which require the officer to act immediately without warrant or consent.").

[16] *See Smith*, 324 Ga. App. at 546-47 (2) ("An officer gains lawful access to an item in plain view by obtaining a search warrant, obtaining consent to search, or the existence of exigent circumstances." (punctuation omitted)); *see also Carranza*, 266 Ga. at 268 (1) ("[When] an individual commits an offense in his or her home and that offense is committed in the presence or within the immediate knowledge of a law enforcement officer, the officer is authorized to arrest the individual in the home without a warrant only [when] the officer's entry into the home is by consent or where there are exigent circumstances." (punctuation omitted)).

[17] *James v. State*, 294 Ga. App. 656, 660 (670 SE2d 181) (2008); *see Fair v. State*, 284 Ga. 165, 172 (3) (c) (664 SE2d 227) (2008) ("Exigent circumstances exist where the police have reasonable grounds to believe that forewarning would either

9

inquiry is whether "the facts, as they appeared at the moment of entry, would lead a reasonable, experienced officer to believe that evidence might be destroyed before a warrant could be secured."[18]

Here, the record shows that during Lewis's encounter with law enforcement, a crowd of onlookers gathered in the vicinity, and occupants from within Lewis's home began interacting with police. All the while, the scales with drug residue remained in open view on the side steps of Lewis's house. In light of this evidence, the trial court concluded that exigent circumstances supported the officers' decision to retrieve the contraband from Lewis's property without a warrant because there was a "genuine risk of evidence destruction."

---

greatly increase their peril or lead to the immediate destruction of the evidence." (punctuation omitted)).

[18] *James*, 294 Ga. App. at 660 (punctuation omitted); *accord Minor v. State*, 298 Ga. App. 391, 397 (1) (b) (680 SE2d 459) (2009); *see Reaves v. State*, 284 Ga. 181, 183 (2) (a) (664 SE2d 211) (2008) ("When police officers have lawfully entered a crime scene, they may take actions justified by exigent circumstances, such as a search to find other victims or perpetrators or to secure evidence that is subject to imminent destruction, and they may seize any evidence which is in plain view during the course of their legitimate emergency activities."); *see also Crocker v. Beatty*, 886 F3d 1132, 1136 (III) (A) (11th Cir. 2018) (exigent circumstances exception applies when there is danger of "imminent destruction of evidence," such that "a reasonable, experienced agent . . . believe[s] that [the] evidence might be destroyed before a warrant could be secured") (citation and punctuation omitted)).

But at the motion-to-suppress hearing, Gratton testified that when the supervisor arrived, he was told to seize the contraband simply because it was in plain view from the neighboring abandoned property. And when Gratton was asked specifically why he did *not* get a warrant to retrieve the contraband, he responded simply, "Plain view." He further testified that Lewis was arrested *after* the contraband was seized.

In short, there was *no* testimony suggesting that the officers entered Lewis's property under exigent circumstances. Indeed, at trial, Gratton testified regarding discussions about calling an assistant district attorney to get a search warrant for *inside* Lewis's house, but one was never obtained because officers decided to leave that task up to another department. But because officers considered obtaining a warrant for the inside of the house, the home's occupants were at one point detained outside to safeguard any evidence that might be inside.

In light of the foregoing, the record does not support the trial court's finding that the officers were entitled to retrieve evidence from the curtilage of Lewis's property under exigent circumstances. To the contrary, the foregoing testimony by Gratton established that the officers walked onto the property and retrieved the contraband from the curtilage of the home simply because it was in "plain view," not

because they believed it was in danger of imminent destruction. Indeed, the officers' ability to successfully secure the house in anticipation of obtaining a warrant to search inside evinces the lack of exigent circumstances. And there is no evidence to suggest that the curtilage of the house could not be secured while a warrant was obtained.[19] Accordingly, the trial court's conclusion is not supported by the evidence, and Lewis's motion to suppress should have been granted.[20] Thus, the trial court erred

[19] *See Merriman v. State*, 201 Ga. App. 817, 821 (1) (412 SE2d 598) (1991) (physical precedent as to Div. 1) ("The observations by the officers gave them probable cause to believe a felony had been committed by the occupants of the property [by growing marijuana in the open]. The procedure then would be to obtain search and arrest warrants. This is especially true as to the marijuana field because two of the officers could have remained behind and determined if any effort was made to destroy or dispose of it, while the third officer obtained a warrant."); *see also Mobley v. State*, 307 Ga. 59, 67 (3) n.10 (834 SE2d 785) (2019) ("As for the exigent circumstances exception, the State argued that an immediate retrieval of data at the scene was necessary because of an imminent danger that the data would be lost or damaged. The evidence at the hearing on the motion to suppress, however, fails to establish any real exigency. There was no evidence that mere delay alone—the time it might take, for instance, to procure a warrant—would have caused the loss or corruption of any data.").

[20] *See Welchel v. State*, 255 Ga. App. 556, 559 (565 SE2d 870) (2002) ("[A]t the time police entered the house, there was no threat, actual or perceived, of the drugs being destroyed if a search was not commenced right away, and *the possibility that the drugs might be destroyed does not excuse the deputy's warrantless entry*. Since no evidence showed that the drugs were in immediate danger of destruction, the police were not authorized to enter . . . without a warrant." (punctuation & citations omitted)); *Gates*, 229 Ga. App. at 768 (a) (holding that there were no exigent circumstances to warrant officers' seizure of marijuana spotted in plain view from

in denying Lewis's motion to suppress, and we reverse his convictions because they were all supported by the evidence recovered in the unlawful seizure.[21]

2. Because we reverse Lewis's convictions under Division 1 (b), we need not address his remaining enumerations of error.

For all these reasons, we reverse Lewis's convictions.

*Judgment reversed. Rickman, P. J. and Brown, J., concur.*

---

neighboring yard and, accordingly, reversing denial of motion to suppress); *see also State v. Schwartz*, 261 Ga. App. 742, 746 (2) (583 SE2d 573) (2003) (explaining that whether exigent circumstances exist is an issue for the trial court to decide, and that "the State points to no evidence that the deputies believed an emergency situation actually existed"); *see also Mobley supra* note 19.

[21] *See Runnells v. State*, __ Ga. App. __, __ (1) (851 SE2d 196, 202 (1) (2020) (reversing convictions on the ground that trial court erred in denying motion to suppress evidence); *Arp*, 327 Ga. App. 340, 346 (2) (759 SE2d 57) (2014) (reversing convictions that were supported by evidence seized in unlawful search, for which trial court erroneously denied defendant's motion to suppress); *Hamlett v. State*, 323 Ga. App. 221, 234 (2) (753 SE2d 118) (2013) (reversing convictions solely supported by illegally obtained evidence); *Rucker v. State*, 276 Ga. App. 683, 685 (2) (624 SE2d 259) (2005) ("As we have held in Division 1 that the trial court erred in denying [the] motion to suppress, his conviction for trafficking in cocaine was not authorized by the evidence and must be reversed."); *Mercer v. State*, 251 Ga. App. 465, 468 (3) (554 SE2d 732) (2001) ("The inadmissible evidence was all the State had to prove their case; thus, the evidence . . . was insufficient for a rational trier of fact to find them guilty beyond a reasonable doubt of the offenses charged.").