**FOURTH DIVISION
DILLARD, P. J.,
MERCIER and PINSON, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**February 8, 2022**

# In the Court of Appeals of Georgia

A21A1355, A21A1396. STATE v. JENNINGS, & vice versa.

DILLARD, Presiding Judge.

In Case Number A21A1355, the State appeals from the grant of a motion to suppress in favor of Sherri Lynn Jennings, arguing the trial court erred by concluding that (1) an officer made an unlawful intrusion onto her property, (2) an officer unlawfully parked close to her vehicle, and (3) the seizure of her vehicle was unlawful. In Case Number A21A1396, Jennings cross appeals from the trial court's denial of her motion to exclude statements she made to investigators, arguing that those statements were derivative of an unlawful search, and alternatively, that the statements should have been excluded because they were made while she was in custody without having been read her *Miranda* rights. For the reasons set forth *infra*,

in Case Number A21A1355, we vacate in part, affirm in part, and remand the case with direction; and in Case No. A21A1396, we affirm.

Viewing the facts in the light most favorable to the trial court's judgment,[1] the record shows that on the evening of October 9, 2017, law enforcement was notified of a hit-and-run on Dawson Forest Road in Dawson County, in which a pedestrian was struck and killed. The only evidence left at the scene was a passenger-side mirror lying on the pavement beside the victim, which came from a black 2009/2010 Ford Escape, Mercury Mariner, or Mazda Tribute. An investigator then searched computer-aided dispatch reports for any prior contacts with law enforcement by vehicles matching that description. Ultimately, a list of 17 vehicles was compiled and law enforcement visited almost all of them to view their exteriors for a missing mirror. This list included a 2009 Ford Escape the investigator believed was located at 6345 Elmo Road in Cumming. The investigator traveled to that address, which is located in a heavily wooded rural area off of a gravel driveway shared by and split up among several residences. The investigator testified that the driveway is "kind of a good

---

[1] *See, e.g.*, *Hughes v. State*, 296 Ga. 744, 746 (1) (770 SE2d 636) (2015) ("[A]n appellate court must construe the evidentiary record in the light most favorable to the factual findings and judgment of the trial court.").

2

distance off the road," is not visible from the road, and the house itself is not visible as you begin the approach up the driveway. According to the investigator, his intention—upon arriving at the Elmo Road address—was to knock on the door and speak with the residents.

As the investigator drove up a slight hill to the house, he spotted the back end of a black Ford Escape parked ahead and "sticking out" in an area on the left side of the house.[2] And upon closer approach to this area, by parking his car beyond the front of the house and behind the Ford Escape (so that it would be unable to leave), he noticed the passenger-side mirror was missing. The investigator later referred to the vehicle's location on the driveway as a "parking area" just past the front of the house, "after you pass the front door."

Having made this observation, the investigator immediately radioed dispatch for assistance. And around this same time, Jennings's husband came out of the house and approached him. The husband immediately asked what the investigator was doing there, to which he responded, "[Y]ou know what I'm doing here," and then inquired as to how the vehicle was damaged. The husband said his wife hit a deer with her

---

[2] The investigator testified that he was able to spot the vehicle when lined up with the area of the front door to the home.

vehicle, and the investigator then requested that he call his wife and ask her to come home to be questioned.

In the interim, Jennings's husband walked over to the vehicle and showed the investigator his attempt to repair the headlight. The husband also told the investigator that he washed the car and tried to push out a dent in the front of the vehicle. The husband then took the investigator to an area on the right side of the home after the investigator asked where the missing pieces for the headlight assembly were located. In this same area, the investigator saw at least one open book regarding courtroom procedure.

At some point, the Jenningses' son came home, and he too claimed that his mother struck a deer while driving the vehicle. And when Jennings finally arrived home, the investigator asked if she wanted to tell him anything, and she said that she "thought she hit a deer" on Dawson Forest Road. Around this same time, seven other officers arrived on the scene to secure the vehicle; and shortly thereafter, Jennings was placed under arrest and the vehicle seized.

Two days after the vehicle was towed, law enforcement secured a search warrant. Jennings was then indicted on charges of first-degree vehicular homicide, hit and run, failure to report an accident, and failure to maintain lane. She

4

subsequently filed a motion to suppress the vehicle and other evidence found at her residence, and also moved to exclude statements she made to law enforcement.

The trial court granted Jennings's motion to suppress the vehicle and other evidence, reasoning that because law enforcement did not possess a warrant or obtain consent to search the property *and* there were no exigent circumstances, the intrusion onto the curtilage of her property and subsequent seizure of evidence violated her rights under the Fourth Amendment to the United States Constitution. But on the question of statements Jennings made to law enforcement during the same visit to her property, the trial court denied the motion to exclude after concluding that those statements were made voluntarily and not while in custody. These appeals follow.

*A21A1355*

1. The State argues the trial court erred by concluding that the investigator acted unlawfully by (1) intruding onto the Jenningses' property, (2) parking his patrol car too close to Jennings's vehicle, and (3) seizing Jennings's vehicle. Instead, the State maintains (1) the investigator lawfully entered onto the property to conduct a "knock and talk"; (2) the investigator was authorized to move closer to the vehicle because he had reasonable, articulable suspicion; and (3) that probable cause supported a warrantless seizure of the vehicle and other instrumentalities of the crime.

5

For the reasons that follow, we vacate in part, affirm in part, and remand for further proceedings consistent with this opinion.

When the facts material to a motion to suppress are disputed, it "generally is for the trial judge to resolve those disputes and determine the material facts."[3] As a result, we must (1) "accept those findings unless they are clearly erroneous"; (2) "construe the evidentiary record in the light most favorable to the factual findings and judgment of the trial court"; and (3) "limit [our] consideration of the disputed facts to those expressly found by the trial court."[4] With these guiding principles in mind, we will now address each of the State's contentions.

a. *Initial Entry to Conduct Knock and Talk.* For starters, the State argues that the investigator's initial entry onto the curtilage[5] of Jennings's property did not

---

[3] *Hughes*, 296 Ga. at 746 (1).

[4] *Id.* (punctuation omitted).

[5] "Curtilage" is defined as "the yards and grounds of a particular address, its gardens, barns, and buildings." *Landers v. State*, 250 Ga. 808, 809 (301 SE2d 633) (1983) (punctuation omitted); *accord Corey v. State*, 320 Ga. App. 350, 354 (1) (a) (739 SE2d 790) (2013); *see also Florida v. Jardines*, 569 U.S. 1, 7 (II) (A) (133 SCt 1409, 185 LE2d 495) (2013) ("While the boundaries of the curtilage are generally 'clearly marked,' the 'conception defining the curtilage' is at any rate familiar enough that it is 'easily understood from our daily experience.' . . . . [And] [t]he front porch is the classic exemplar of an area adjacent to the home and to which the activity of home life extends." (citation & punctuation omitted)); *Oliver v. United States*, 466

6

require exigent circumstances because it was not to do a search of the property, but was instead done to conduct a "knock and talk." Warrantless searches of the curtilage are, of course, "per se unreasonable under the Fourth Amendment[6]—subject only to a few specifically established and well-delineated exceptions."[7] And as the State

---

U.S. 170, 180 (III) (A) (104 SCt 1735, 80 LE2d 214) (1984) ("[C]ourts have extended Fourth Amendment protection to the curtilage; and they have defined the curtilage, as did the common law, by reference to the factors that determine whether an individual reasonably may expect that an area immediately adjacent to the home will remain private."); *A New Law Dictionary* 203 (Giles Jacob ed. 1732) (defining "curtilage" as "a Court, Yard, Back[s]ide, or Piece of Ground lying near or belonging to a Dwelling hou[s]e"); 4 W. Blackstone, *Commentaries on the Laws of England* 225 (1769) ("[T]he capital house protects and privileges all its branches and appurtenants, if within the curtilage.").

[6] *See* U.S. CONST. amend. IV ("The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."); *see also* GA. CONST. art. 1, § 1, ¶ XIII ("The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue except upon probable cause supported by oath or affirmation particularly describing the place or places to be searched and the person or things to be seized.").

[7] *State. v. Newsome*, 352 Ga. App. 546, 549-50 (835 SE2d 329) (2019); *accord Watson v. Pearson*, 928 F3d 507, 512 (6th Cir. 2019); s*ee generally Katz v. United States*, 389 U.S. 347, 357 (88 SCt 507, 19 LE2d 576) (1967); *see also Collins v. Virginia*, __ U.S. __ (138 SCt 1663, 1676, 201 LE2d 9) (2018) (Thomas, J. concurring) ("As a general rule, warrantless searches of the curtilage violate [the Fourth Amendment]. At the founding, the curtilage was considered part of the house itself.").

rightly notes, one such exception is a "knock and talk" procedure, in which law enforcement approaches a home or residence to investigate a crime or make inquiries of the occupants.[8] But the trial court found the investigator proceeded *beyond* the area necessary to conduct a knock and talk by driving further up the driveway and parking directly behind the vehicle.[9] As a result, the court concluded the officer began a search of the property without a warrant, consent, or exigent circumstances.

Further, the trial court concluded that even if the investigator had been in a lawful position from which to view the vehicle after passing the front of the house

---

[8] *Newsome*, 352 Ga. App. at 550; *see Kentucky v. King*, 563 U.S. 452, 466-467 (III) (B) (131 SCt 1849, 179 LE2d 865) (2011) (Alito, J.) ("[T]he police may wish to speak with the occupants of a dwelling before deciding whether it is worthwhile to seek authorization for a search. They may think that a short and simple conversation may obviate the need to apply for and execute a warrant.").

[9] *See Newsome*, 352 Ga. App. at 552 (holding that "the trial court was authorized to conclude that the officer was not entitled to enter the curtilage in the manner in which he did, and that he was not in a place that he was authorized to be when he viewed the stolen tools," when evidence showed that officer spotted stolen tools near backdoor to home, which he approached only after receiving no answer for "knock and talk" at home's front door); *see also Jardines*, 569 U.S. at 8 (II) (B ("This implicit license typically permits the visitor to approach the home by the front path, knock promptly, wait briefly to be received, and then (absent invitation to linger longer) leave. Complying with the terms of that traditional invitation does not require fine-grained legal knowledge; it is generally managed without incident by the Nation's Girl Scouts and trick-or-treaters. Thus, a police officer not armed with a warrant may approach a home and knock, precisely because that is no more than any private citizen might do." (footnote & punctuation omitted)).

(and thus the front door), there were no exigent circumstances or consent by which the officer could search the remainder of the curtilage or seize the vehicle without first obtaining a warrant. Indeed, not only must an officer be "lawfully located in a place from which the object can be plainly seen,"[10] he or she must also have "a lawful right of *access* to the object itself."[11] This is true even when items of contraband are visible within an officer's plain view.[12] And an officer gains lawful access to an item

[10] *Gates v. State*, 229 Ga. App. 766, 768 (a) (495 SE2d 113) (1997) (punctuation omitted); *accord Horton v. California*, 496 U.S. 128, 136-37 (II) (110 SCt 2301, 110 LE2d 112) (1990); *George v. State*, __ Ga. __ (865 SE2d 127, 130) (2021); *see supra* note 6.

[11] *Gates*, 229 Ga. App. at 768 (a) (emphasis supplied); *see Lewis v. State*, 358 Ga. App. 482, 485 (1) (b) (855 SE2d 708) (2021) ("[P]olice officers are prohibited from entering a person's home or its curtilage without a warrant absent consent or a showing of exigent circumstances. This is true even when items of contraband are visible within an officer's plain view."); *Carranza v. State*, 266 Ga. 263, 266 (1) (467 SE2d 315) (1996) ("It is elementary that probable cause, however well founded, can provide no justification for a warrantless intrusion of a person's home absent a showing that the exigencies of the situation made that course imperative." (punctuation omitted)).

[12] *See Smith v. State*, 324 Ga. App. 542, 546-47 (2) (751 SE2d 164) (2013) ("An officer gains lawful access to an item in plain view by obtaining a search warrant, obtaining consent to search, or the existence of exigent circumstances." (punctuation omitted)); *see also Carranza*, 266 Ga. at 268 (1) ("[When] an individual commits an offense in his or her home and that offense is committed in the presence or within the immediate knowledge of a law enforcement officer, the officer is authorized to arrest the individual in the home without a warrant only [when] the officer's entry into the home is by consent or where there are exigent circumstances."

9

in plain view by "obtaining a search warrant, obtaining consent to search, or the existence of exigent circumstances."[13] This, the officers did not do.

---

(punctuation omitted)).

[13] *Galindo-Eriza v. State*, 306 Ga. App. 19, 21 (1) (701 SE2d 516) (2010); *see Arp v. State*, 327 Ga. App. 340, 342 (1) (759 SE2d 57) (2014) ("[E]ven if officers have probable cause, absent exigent circumstances or proper consent, warrantless searches and seizures within a home by officers in pursuit of their traditional law enforcement duties are presumptively unreasonable."); *Corey v. State*, 320 Ga. App. 350, 353 (1) (739 SE2d 790) (2013) ("[E]ven if officers have probable cause to investigate a crime, without a warrant, exigent circumstances, or proper consent, they may not enter a home or its curtilage."). Because the State does not challenge the trial court's conclusions regarding the absence of consent or exigent circumstances, we deem any such arguments abandoned. *See Reece v. State*, 210 Ga. 578, 578 (4) (82 SE2d 10) (1954) (holding that grounds for appeal that were not raised in the briefs nor otherwise argued during appeal proceedings were abandoned); *Davenport v. State*, 328 Ga. App. 850, 851 (763 SE2d 130) (2014) ("[Appellant] does not present any argument in support of this enumeration and does not challenge the trial court's finding that the evidence [appellant] presented to support a finding of materiality was 'speculative.' Thus, we deem this enumeration to be abandoned, and that portion of the trial court's order stands affirmed."); *Jones v. Bd. of Regents of Univ. Sys. of Ga.*, 262 Ga. App. 75, 79 (3) (585 SE2d 138) (2003) ("As [appellant] does not argue these claims in his appellate brief, they are deemed abandoned."); *see also Blalock v. Cartwright*, 300 Ga. 884, 889 (III) n.4 (799 SE2d 225) (2017) ("Because [appellant] has not challenged the trial court's dismissal order as it specifically relates to his attorney fee claims, we do not address these claims on appeal.").

Having considered all of the foregoing, we agree with the trial court that the investigator exceeded the scope of a permissible knock and talk after his initial entry onto the property in violation of the Fourth Amendment.[14]

b. *Reasonable, Articulable Suspicion.* Next, the State contends the investigator had reasonable, articulable suspicion that the vehicle on Jennings's property was the one being sought by law enforcement, and therefore he was authorized to move closer to the car after the initial approach to conduct a knock and talk. But the State did not make this argument to the trial court below. And as this Court is one for the correction of legal errors, we have no jurisdiction to address issues raised for the first time on appeal.[15]

Furthermore, even if the State had made this argument below, it abandoned this contention on appeal by failing to support it with legal argument and citation to

---

[14] *See supra* notes 9-13.

[15] *See, e.g.*, *Fides v. State*, 237 Ga. App. 607, 607 (516 SE2d 101) (1999) ("This Court is a court for the correction of legal errors and has no jurisdiction to address issues that are raised for the first time on appeal. Also, [appellant] may not abandon an issue in the trial court and on appeal raise questions on which the trial court has not ruled." (punctuation & citation omitted)).

relevant binding authority.[16] We remind the State that "the requirements as to the form of appellate briefs were created, not to provide an obstacle, but to aid parties in presenting their arguments in a manner most likely to be fully and efficiently comprehended by this Court."[17] And as a result, we will not address this argument.

c. *Probable Cause*. Finally, the State argues the officers had probable cause to believe the vehicle and other evidence were instrumentalities of a crime following Jennings's statements to police and her subsequent arrest. More specifically, the State asserts that after Jennings was arrested, officers could seize any instrumentalities of the crime.

---

[16] *See* CT. APP. R. 25 (c) (2) ("Any enumeration of error that is not supported in the brief by citation of authority or argument may be deemed abandoned."). *See generally Flowers v. State*, 269 Ga. App. 443, 445 (1) (604 SE2d 285) (2004) ("As we have explained, legal analysis is, at a minimum, a discussion of the appropriate law as applied to the relevant facts." (punctuation omitted)). Suffice it to say, the State's inclusion of a citation to a case regarding the traffic stop of a vehicle within a parking lot is wholly inapposite to the facts of this case.

[17] *Daker v. State*, 300 Ga. 74, 76 (2) (792 SE2d 382) (2016) (punctuation omitted); *accord Daniel v. Allstate Ins. Co.*, 290 Ga. App. 898, 900-01 (1) (660 SE2d 765) (2008) (punctuation omitted); *see also* Stephen Louis A. Dillard, *Open Chambers Revisited: Demystifying the Inner Workings and Culture of the Georgia Court of Appeals*, 68 Mercer L. Rev. 1, 7 (II) (2016) ("The quickest way to sabotage your appeal is to fail to substantiate legal arguments or key factual or procedural assertions.").

The State appears to have raised some semblance of this contention for the first time in its post-hearing brief before the trial court, but the court never ruled on this particular argument. Instead, the trial court based its grant of Jennings's motion to suppress solely on its finding that there was no consent to search the property and no exigent circumstances.

We are, of course, "a court of review, not of first view."[18] As a result, we may remand a case for further factual findings when the trial court's order lacks sufficient detail to enable meaningful appellate review.[19] This is such a case. Thus, because the trial court did not explicitly make findings of fact or rule upon this alternative argument by the State, we vacate the court's order to the extent it *implicitly* ruled on

---

[18] *Flanders v. State*, 360 Ga. App. 855, 855 (862 SE2d 152) (2021) (punctuation omitted); *accord Cutter v. Wilkinson*, 544 U.S. 709, 718 n.7 (125 SCt 2113, 161 LE2d 1020) (2005).

[19] *Flanders*, 360 Ga. at 855; *see Williams v. State*, 301 Ga. 60, 62 (799 SE2d 779) (2017) ("Given the uncertainty in the trial court's order regarding the basis for its ruling, this Court must vacate the opinion of the Court of Appeals and remand for the Court of Appeals to remand this case to the trial court for further clarification on the specific findings that form the basis for its legal conclusions with regard to [the] motion to suppress."); *Weintraub v. State*, 352 Ga. App. 880, 889 (836 SE2d 162) (2019) ("Our Supreme Court has instructed that we may remand for further factual findings where the trial court's order lacks sufficient detail to enable meaningful appellate review.").

this issue and remand for it to address and rule upon this argument in the first instance.[20]

*A21A1396*

2. In her cross-appeal, Jennings argues that her statements to investigators should be excluded because they (1) were derivative of an unlawful search and (2) in the alternative, were made while in custody without having been read her *Miranda*[21] rights.

---

[20] *See Flanders*, 360 Ga. at 855 ("Given the trial court's failure to address [the] claim, we must vacate the trial court's order to the extent it at least implicitly denied that claim and remand for the trial court to address the claim in the first instance." (footnote omitted)); *see also* OCGA § 17-5-1 (a) (4) ("When a lawful arrest is effected a peace officer may reasonably search the person arrested and the area within the person's immediate presence for the purpose of . . . [d]iscovering or seizing any instruments, articles, or things which are being used or which may have been used in the commission of the crime for which the person has been arrested."); *Abrams v. State*, 223 Ga. 216, 220 (2) (154 SE2d 443) (1967) ("It is well established by . . . United States Supreme Court cases that instrumentalities used in the commission of a crime may be seized at the time of the arrest without a search warrant. The doctrine that a search without warrant may be lawfully conducted if incident to a lawful arrest has long been recognized as consistent with the Fourth Amendment's protection against unreasonable searches and seizures[.]" (punctuation omitted)). Again, because the State did not challenge the trial court's ruling on the questions of consent and exigent circumstances, and thus abandoned any such arguments on appeal, we do not vacate the trial court's opinion as to those rulings, which stand affirmed. *See supra* note 13.

[21] *See Miranda v. Arizona*, 384 U.S. 436 (86 SCt 1602, 16 LE2d 694) (1966).

14

(a) *Derivative Statements*. The trial court made no explicit ruling on whether Jennings's statements to law enforcement were also subject to exclusion on the basis that they were derivative of what it determined was an unlawful search of the property, as discussed in Division 1 *supra*. Indeed, in a second order, the court denied Jennings's separate motion to exclude her statements to law enforcement because she was not in custody at the time those statements were made.

Notably, the record does not show that Jennings specifically moved to suppress her statements on the basis that they were derivative of the unlawful search, and we do not reverse trial court judgments as being "wrong for any reason."[22] Indeed, as previously noted, we are a court for the correction of errors.[23] That said, it is possible

---

[22] *See Moore v. State*, 290 Ga. 805, 808 (2) n.3 (725 SE2d 290) (2012) ("There is no 'wrong for any reason' doctrine, and this Court will not reverse a judgment on an issue never raised or ruled on in the trial court[.]"), *superseded by statute on other grounds as stated in Brewner v. State*, 302 Ga. 6, 14 (III) (804 SE2d 94) (2017); *State v. Hudson*, 303 Ga. 348, 355 (812 SE2d 270) (2018) (Hunstein, J., concurring specially) ("As this Court has previously emphasized, there is no 'wrong for any reason' doctrine."); *Lowe v. State*, 352 Ga. App. 458, 463 (835 SE2d 301) (2019) ("[W]hile we have under certain circumstances applied the 'right for any reason' rule to reach issues unaddressed by either party in order to affirm a judgment as right for any reason, it does not follow that we apply the 'wrong for any reason' rule to reverse incorrect rulings on issues not raised or ruled upon in the trial court." (punctuation omitted)).

[23] *See Mordica v. State*, 319 Ga. App. 149, 154-55 (2) (736 SE2d 153) (2012) ("It is well settled that this Court may not address issues on appeal which were not

the trial court at least implicitly ruled on this question when it suppressed evidence

"derivative" of the search discussed *supra*.[24] So, in light of our directive in Division

1 (c), the trial court should explicitly rule upon this question on remand when it

addresses the vacated portion of the order at issue in Case Number A21A1355.[25]

---

addressed by the trial court, because this Court is a court for the correction of errors and it does not consider matters which were not raised and ruled on by the trial court. Without a ruling by the trial court on this particular issue, there is nothing for this Court to review upon appeal." (punctuation & footnote omitted)); *Freeland v. State*, 223 Ga. App. 326, 326 (2) (477 SE2d 633) (1996) ("Issues presented for the first time on appeal furnish nothing for us to review, for this is a court for correction of errors of law committed by the trial court where proper exception is taken, because one may not abandon an issue in the trial court and on appeal raise questions or issues neither raised nor ruled on by the trial court." (punctuation omitted)).

[24] *See Wong Sun v. United States*, 371 U.S. 471, 485 (83 SCt 407, 9 LE2d 441 (1963) ("[V]erbal evidence which derives so immediately from an unlawful entry and an unauthorized arrest as the officers' action in the present case is no less the 'fruit' of official illegality than the more common tangible fruits of the unwarranted intrusion.").

[25] *See Brown v. Illinois*, 422 U.S. 590, 601-02 (III) (95 SCt 2254, 45 LE2d 416) (1975) ("[E]ven if the statements in this case were found to be voluntary under the Fifth Amendment, the Fourth Amendment issue remains. In order for the causal chain, between the illegal arrest and the statements made subsequent thereto, to be broken, *Wong Sun* requires not merely that the statement meet the Fifth Amendment standard of voluntariness but that it be sufficiently an act of free will to purge the primary taint.' *Wong Sun* thus mandates consideration of a statement's admissibility in light of the distinct policies and interests of the Fourth Amendment." (punctuation & citation omitted)); *id.* at 603-04 (III) ("The *Miranda* warnings are an important factor, to be sure, in determining whether the confession is obtained by exploitation of an illegal arrest. But they are not the only factor to be considered. The temporal

(b) *In-Custody Statements.* Next, Jennings argues the trial court erred by failing to exclude her statements on the basis that they were made while she was in custody without having been read her *Miranda* rights. We disagree.

When an accused is neither in custody nor so restrained as to "equate to a formal arrest, any statements made to an investigating officer are made under noncustodial circumstances and *Miranda* warnings are not required."[26] Indeed, *Miranda* protections adhere when an individual is "(1) formally arrested or (2) restrained to the degree associated with a formal arrest."[27] The second prong must be evaluated objectively—*i.e.*, "an individual is in custody if a reasonable person in the place of the defendant would feel so restrained as to equate to a formal arrest."[28]

---

proximity of the arrest and the confession, the presence of intervening circumstances, and, particularly, the purpose and flagrancy of the official misconduct are all relevant. The voluntariness of the statement is a threshold requirement. And the burden of showing admissibility rests, of course, on the prosecution." (citations & footnotes omitted)); *see also State v. Poppell*, 277 Ga. 595, 597 (592 SE2d 838) (2004) (reciting and relying upon the factors from *Brown v. Illinois*); *Lawson v. State*, 299 Ga. App. 865, 868 (1) (684 SE2d 1) (2009) (same).

[26] *Durham v. State*, 281 Ga. 208, 209 (2) (636 SE2d 513) (2006) (punctuation omitted).

[27] *Id.*

[28] *Id.* 209-10 (2).

Here, our review of the evidence establishes that the trial court did not clearly err by finding Jennings was not in custody at the time she made her statements to law enforcement, and thus it did not err in denying her motion to exclude those statements. The court concluded that Jennings made her statements while outside on her own property, without threats by law enforcement, while she was not handcuffed, and while she was not otherwise restrained. And because the record—which includes a DVD recording[29]—supports these findings, we affirm the trial court's ruling in this regard.[30]

---

[29] The DVD shows Jennings immediately approaching the investigator upon her arrival home and offering information and answering his questions without hesitation. Jennings is visibly upset during the exchange (by virtue of the allegation that she hit a person with her vehicle rather than a deer), but she was not handcuffed or otherwise restrained.

[30] *See State v. Walden*, 311 Ga. 389, 395 (858 SE2d 42) (2021) ("[Appellant] was not handcuffed or otherwise restrained, and she waited less than an hour to speak to the investigator. [Appellant] claims that [a deputy] impeded her exit because he was in uniform, armed, and seated next to the door, and the exit was not obviously accessible. But the door to the interview room clearly remained open while they waited, and [the deputy] did not sit in front of the doorway. And although [Appellant] emphasizes that she was interviewed in an interrogation room, by an investigator, without any family members present, these factors by themselves would not support a finding that she was in custody."); *DeVaughn v. State*, 296 Ga. 475, 479 (4) (769 SE2d 70) (2015) ("The record in this case supports the trial court's findings that Appellant drove himself to the police station after being asked to speak to the investigators; while the police temporarily took his car keys so that they could inspect the car in his presence, he was not restrained in any way, was never told he was under

18

Accordingly, as to Case Number A21A1355, we affirm the judgment in part, vacate the judgment in part, and remand the case for further proceedings consistent with this opinion; and as to Case Number A21A1396, we affirm the trial court's judgment.[31]

*Judgment in Case No. A21A1396 affirmed. Judgment in Case No. A21A1355 affirmed in part, vacated in part, and case remanded with direction. Mercier and Pinson, JJ., concur.*

---

arrest, and was allowed to speak to his mother on the phone during the interview; and, when he asked to leave, he was allowed to do so.").

[31] As a reminder, in Case No. A21A1355, we considered the trial court's grant of Jennings's motion to suppress evidence and affirmed the trial court's ruling on the questions of consent and exigent circumstances, but we vacated the court's judgment to the extent it implicitly ruled on the State's argument regarding seizure of evidence subsequent to Jennings's statements and arrest. In Case No. A21A1396, we considered the trial court's separate order denying Jennings's motion to suppress her statements on the basis that they were involuntarily made and affirmed the trial court's ruling; however, we directed the trial court to explicitly rule upon the admissibility of Jennings's statements as they relate to the *Fourth Amendment* issues discussed in Case No. A21A1355 that are to be further explored on remand of that case.